NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

OLYMPIC MEDICAL CORPORATION,
Respondent.

No. 78-2868.

United States Court of Appeals,
Ninth Circuit.

Nov. 19, 1979.

Jerrold J. Wohlgemuth, Washington, D. C., for petitioner.

Eugene R. Nielson, Lane, Powell, Moss & Miller, Seattle, Wash., for respondent.

Before TRASK and HUG, Circuit Judges, and COWEN,* Senior Judge.

TRASK, Circuit Judge:

This case is before us on application of the National Labor Relations Board (Board), under section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1976) (the Act), for enforcement of its decision and order against Olympic Medical Corporation (Olympic), a Seattle, Washington company engaged in the manufacture of medical equipment. We enforce the Board's decision and order, which is reported at 236 N.L.R.B. No. 140 (1978).

On July 12, 1977, the Assortment Sheet Metal Workers' Local No. 383, Sheet Metal Workers' International Association, AFL–CIO (Union) lost an election held pursuant to Olympic's Stipulation for Certification Upon Consent Election. The Union filed timely objections to the election alleging a number of unfair labor practices. The Board affirmed an ALJ's finding that Olympic did engage in unfair labor practices and ordered a new certification election and other relief. Olympic resists enforcement on the grounds that the Board's findings are not supported by substantial evidence and, in part, deny Olympic due process.

■ Olympic contends that the Board's finding that it violated section 8(a)(3) of the Act, by discriminatorily denying wage increases to three employees, denied it due process for the sole reason that the complaint contained no allegation of this charge and was not subsequently amended to conform to the issues litigated. Olympic does not contend that the issue was not fully and fairly litigated, and an examination of the record satisfies us that it was. In *Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1304 (9th Cir. 1978), we noted that:

This court has held that the Board may find an unfair labor practice when the issue has been fully and fairly litigated even though no specific charge was made in the original complaint. [citations omitted]. The Board may properly "render a decision based upon the issues actually tried * * *, or it could order amendment to conform to proof * *." *Frito Co. v. NLRB*, 330 F.2d 458, 465 (9th Cir. 1964).

Olympic was not denied due process and its argument to the contrary is without merit.

Olympic also contends that there is no substantial evidence to support any of the Board's findings of unfair labor practice. We must affirm the Board's findings if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Queen Mary Restaurants Corp. v. NLRB*, 560 F.2d 403, 407 (9th Cir. 1977). The Board found that Olympic had engaged in five unfair labor practices.

■ First, the Board found that Olympic had imposed a rule forbidding employees to discuss union issues during work hours, without barring discussions of other non-work related matters. Enforcement of discriminatory non-solicitation rules violates section 8(a)(1) of the Act. *NLRB v. E.D.S. Service Corp.*, 466 F.2d 157, 158 (9th Cir. 1972). The ALJ rejected testimony by Olympic president Jones that the company had an unwritten rule barring non-work

* Honorable Wilson Cowen, Senior Judge, United States Court of Claims, sitting by designation.

related discussion generally. It is within the province of the ALJ to make rulings on witness credibility. *NLRB v. Bell Manufacturing Division*, 483 F.2d 150, 151–52 (9th Cir. 1973). Olympic employees testified that they regularly discussed non-work related matters including party invitations, baby birthdate pools, sales of crab, and the signing of greeting cards. We conclude that there is substantial evidence supporting the Board's finding of an unfair labor practice.

Second, the Board found that Olympic withheld a periodic wage increase because the Union had filed a representation petition. The Board found that the wage increase would ordinarily have been granted to all employees performing satisfactorily. The ALJ found that Olympic:

> Withheld the periodic wage increase for the purpose of inducing employees to vote against the union and to discourage them from otherwise engaging in activities in support of the Union.

Olympic was therefore found to have been motivated by a desire to affect the Union campaign. *See Free-Flow Packaging Corp. v. NLRB*, 566 F.2d 1124, 1128–30 (9th Cir. 1978). Olympic regularly granted employees raises of 50 cents per hour each January 1 and July 1. It withheld the raise scheduled for July 1, 1977, on the ground that a raise during a union campaign might be considered an unfair labor practice. Olympic, however, has a duty not to change its ordinary compensation structure, *NLRB v. Dothan Eagle, Inc.*, 434 F.2d 93, 98 (5th Cir. 1970), and the Union twice assured Olympic management that no unfair labor practice charge would be asserted if the ordinarily scheduled raise were granted. We conclude that there was substantial evidence supporting the Board's finding that withholding the wage increase was an unfair labor practice.

Third, the Board found that Olympic discriminatorily denied retroactive wage increases to three employees as a result of their Union activity. Following the election, Olympic granted all employees the wage increases it had previously withheld, and made the increases retroactive to July 1. The increases were granted even to employees no longer on the payroll who worked subsequent to July 1, with the exception of employees Dussault (Union election supervisor), Crangi (a Union activist) and Parks (a close friend and companion of Dussault and Crangi as well as a Union card signer). The Board found that denying retroactive increases to Crangi, Dussault and Parks was an unfair labor practice. We conclude that there was substantial evidence supporting this finding.

Fourth, the Board found that on the day after the Union filed its representation petition, Olympic granted the entire production crew some time off with pay in order to curry favor with those employees. Olympic contends that the time off was granted as a reward for finishing a particularly pressing project, however the record demonstrates, and the ALJ found, that only a portion of the crew worked directly on the project and that Olympic had never before given the entire crew time off—just selected individuals. These factors together with the timing of Olympic's grant of time off supplies substantial evidence in support of the Board's finding of an unfair labor practice.

Finally, the Board found that during employee meetings prior to the election, Olympic president Jones misrepresented to his employees their post-strike reemployment rights. Each of three employees testified that Jones declared that a strike was likely and that employees who had gone on strike would have rehire priority rights only as to job openings in the same job category as that in which each employee worked just prior to going on strike. This incorrectly stated the employees' right to be rehired for any job for which they were qualified—not just those positions most recently held. *See NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 381, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). There was substantial evidence on the record that Olympic employees were typically qualified to do a number of jobs. We conclude that there was substantial evidence supporting the Board's finding that Jones

misrepresented employee rights and thus committed an unfair labor practice. *See Queen Mary Restaurants Corp. v. NLRB,* 560 F.2d 403, 411 (9th Cir. 1977).

We hold that Olympic was not denied due process and that there was substantial evidence supporting each of the Board's findings.

The Board's order is enforced.