AARON BROTHERS COMPANY, A DIVISION OF CHROMALLOY AMERICAN CORP., Petitioner-Cross Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.

Nos. 79–7592, 80–7056.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1980.

Decided Nov. 16, 1981.

David L. Cohen, Marina Del Rey, Cal., for petitioner-cross respondent.

Steven Fetter, Washington, D. C., for respondent-cross petitioner.

---

* Honorable Francis C. Whelan, United States District Judge for the Central District of Cali-

Before TANG and NORRIS, Circuit Judges and WHELAN *, District Judge.

TANG, Circuit Judge.

Aaron Brothers Company seeks review of a National Labor Relations Board decision and the Board seeks to enforce ·its order. Two issues are raised: (1) whether Aaron Brothers violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5) (1976), when it instituted a wage increase without first consulting or bargaining with the union representing the company's employees; and (2) whether Aaron Brothers violated sections 8(a)(1) and (5) by refusing to entertain wage proposals beyond the amount granted by the company's unilateral wage increase.

## I

### FACTS

Aaron Brothers is engaged in retail art sales. As part of its business, the company operates a warehouse in California. In 1975, the Teamsters Automotive Workers Union, Local No. 495 (the Union), was certified as the bargaining representative for the warehouse employees. To challenge the certification's validity, Aaron Brothers refused to bargain with the union; the National Labor Relations Board (the Board) ordered Aaron Brothers to bargain, and this court enforced the order. *See Aaron Brothers Corp.*, 223 N.L.R.B. 1179 (1976), *enf'd*, 563 F.2d 409 (9th Cir. 1977).

Aaron Brothers and the Union met to negotiate a contract on March 30, 1978. Negotiations were conducted by the company representative, John Fretwell, and Un-

fornia, sitting by designation.

ion representative John Krasnick.[1] Krasnick and Fretwell held four bargaining sessions between the first meeting and June 15, 1978. They discussed various contract items, including wages, during the meetings, but they reached tentative agreement only with respect to a union security clause. At the completion of the June 15 session, the parties scheduled their next session for September 15, 1978. The session was later postponed to November 9, 1978.

On September 22, 1978, Aaron Brothers sent a notice to all of its employees, including those in the bargaining unit, that it was instituting a 19 cents an hour wage increase, effective October 5, 1978. Aaron Brothers considered notifying the Union, but decided against such action. The increase went into effect as scheduled.

The Union first learned of the increase at the November 9 bargaining session. Fretwell apologized for not notifying Krasnick earlier. Krasnick stated that the wage increase was an unfair labor practice and Fretwell agreed that it would be so interpreted. Krasnick then suggested that they use the wage increase as a base for further negotiations. Fretwell replied that he had no authority to grant anything further. Krasnick then stated that there was no sense in negotiating further and indicated that he was going to file an unfair labor practice charge. Fretwell agreed with Krasnick's assessment, and the session adjourned.

The Union filed an unfair labor practice charge on November 28, 1978. A hearing was held on April 17, 1979 before an Administrative Law Judge (ALJ). The ALJ found that Aaron Brothers had violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (NLRA) by instituting the October 5 wage increase and refusing on November 9 to negotiate further on wages. The ALJ entered an order requiring, *inter alia*, Aaron Brothers to refrain from unilaterally implementing wage increases and to cease refusing to negotiate wage changes beyond the increase granted on October 5, 1978. The National Labor Relations Board (the Board) adopted the ALJ decision without modification.

Aaron Brothers now petitions the Court of Appeals for review of the Board decision and the Board cross-applies to enforce the order.

## II

### Wage Increase

■ It is settled that an employer violates sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. §§ 158(a)(1) & (5) (1976),[2] if he or she institutes a wage change without first consulting and bargaining with the union representing the employees. *NLRB v. Katz*, 369 U.S. 736, 745–47, 82 S.Ct. 1107, 1112–14, 8 L.Ed.2d 230 (1962). Aaron Brothers concedes that it implemented the October 5 wage increase without first alerting or consulting the Union. It argues, however, that the wage increase did not violate sections 8(a)(1) and 8(a)(5) because the increase was part of a continuing company policy annually to adjust wages and was therefore not a change in working conditions subject to the *Katz* rule.

The Board and the ALJ did not rule on whether the wage increase was instituted

---

1. On the strength of the ALJ's credibility assessment, we credit Krasnick's version of the facts in the few instances of conflicting testimony. The ALJ stated at page 3, n.4:

    This discrepancy is resolved in Krasnick's favor because his overall demeanor was more convincing then Fretwell's; his testimony on this point and generally carried greater substantive plausibility than Fretwell's in instances of conflict; and, as is about to be developed, Fretwell testified on one occasion with such palpable falseness as to cast serious doubt on his credibility in any case of conflict.

2. Section 8(a)(1) and (5) of the NLRA provide:
    (a) It shall be an unfair labor practice for an employer—
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
    (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.
    29 U.S.C. § 158(a)(1) and (5) (1976).

pursuant to a longstanding company policy. The ALJ concluded that even if it was, Aaron Brothers was required to notify the Union of the impending increase, citing the Board's decision in *Allis-Chalmers Corp.*, 237 N.L.R.B. 290, 291 (1978), *enf'd on other grounds*, 601 F.2d 870, 875 (5th Cir. 1979) (wage increases not automatic), *enf'mt stayed pending review*, 608 F.2d 1018 (5th Cir. 1979) (sole issue whether union properly certified). The Board affirmed this position without comment.

▆ The Board's position is contrary to this circuit's established rule. Wage changes that merely reflect continuations of past company policy are not considered changes in existing work conditions, and thus fall outside the *Katz* rule. *See Queen Mary Restaurants Corp. v. NLRB*, 560 F.2d 403, 408 (9th Cir. 1977); *NLRB v. Nello Pistoresi & Son, Inc. (S & D Trucking Co., Inc.)*, 500 F.2d 399, 400 (9th Cir. 1974). Moreover, no other circuit has accepted the Board's position. *See, e. g., NLRB v. Phil-Modes, Inc.*, 406 F.2d 556, 557 n.3 (5th Cir. 1969) (Board position "simply begs the question of whether there was a change in wages").

The Board suggests on appeal that an enforcement order can be granted on the alternative ground that this wage increase does not fit within the "longstanding practice" exception to *Katz*. The burden of proving that a wage increase falls within the longstanding practice exception is upon the employer. *See NLRB v. Allis-Chalmers Corp.*, 601 F.2d 870, 875 (5th Cir. 1979), *modified*, 608 F.2d 1018 (5th Cir. 1979) (sole issue whether union properly certified). While the Board's argument may have merit, it is not clear upon this record whether Aaron Brothers has met its burden.

In determining whether a benefit change fits within the *Katz* exception, the Supreme Court has counseled lower courts to examine the degree to which an employer has discretion to award a benefit or determine its size. *See Katz*, 369 U.S. at 746–47, 82

S.Ct. at 1113–14. The greater the discretion, the Court has reasoned, the greater the danger unilateral action will destabilize industrial relations by undermining a union's institutional credibility.

In applying this standard, we have focused principally upon how long an employer's practice has been in effect. By itself this standard does not give a clear indication whether here the wage increase was a change in working conditions or whether it was merely a continuation of established company policy. The policy was four years old. This time period falls between the periods we have deemed insufficient to qualify as a longstanding practice and periods we have declared sufficient. *Compare Queen Mary Restaurants Corp.*, 560 F.2d at 408 (wage increase to employees not part of a longstanding practice when wages increased only once under policy) *and Nello Pistoresi & Son, Inc.*, 500 F.2d at 400 (when Christmas bonus paid for only two years and followed no formula, discontinuance of bonus not unilateral change in terms of employment) *with NLRB v. Progress Bulletin Publishing Co.*, 443 F.2d 1369 (9th Cir. 1971) (when Christmas bonus paid regularly for 20 of previous 21 years and amount varied with seniority of employees, discontinuance of bonus was unilateral change in working conditions).

We also have indicated that a court should consider whether the benefit change was fixed by an established formula containing variables beyond the employer's immediate influence. *Nello Pistoresi & Son, Inc.*, 500 F.2d at 401 (holding that Christmas bonus was not established policy partly because employer used no formula to compute bonus; distinguishing earlier case partly on ground that bonus program there was tied to employees' seniority). Three circuits follow this approach and inquire whether benefit changes result from fixed guidelines or formulae based on sales, employee tenure, or other factors beyond an employer's immediate control.[3]

---

**3.** *See Allis-Chalmers Corp.*, 601 F.2d at 875–76 (wage increase did not result from "purely automatic" policy and was not pursuant to "definite guidelines"); *NLRB v. John Zink Co.*, 551 F.2d 799, 801–02 (10th Cir. 1977) (where company action was not "automatic" and involved

Aaron Brothers urges the adoption of the Second Circuit rule that unilateral wage increases of any amount are permissible under section 8(a)(5) so long as the employer has had a history periodically of increasing employee benefits. *See NLRB v. Hendel Manufacturing Co., Inc.*, 523 F.2d 133, 135 (2d Cir. 1975); *NLRB v. Patent Trader, Inc.*, 415 F.2d 190, 199–200 (2d Cir. 1969), *modified in part on other grounds,* 426 F.2d 791 (2d Cir. 1970). We reject this approach. So long as an employer has made wage changes on a regular basis, the Second Circuit rule appears to give an employer unfettered discretion to implement a wage change of any amount without first consulting or bargaining with the union representing the employees. This standard allows an employer routinely to circumvent the collective bargaining process, a result the *Katz* Court sought to avoid by creating a *per se* rule.[4]

Nothing in this record suggests that Aaron Brothers relies upon pre-established guidelines or formulae in deciding whether to grant a wage increase or in determining its size. Moreover, the marked fluctuation in the size of the raises from year to year, summarized in Table # 1, suggests that the wage decision was the product of an *ad hoc* decisionmaking process rather than a continuation of an established company policy.

Table #1   Wage Increases Granted by Aaron Brothers to Hourly-Paid Employees by Date Increase Became Effective and by Amount of Increase.

| Effective Date | Amount of Increase |
| --- | --- |
| July 18, 1975 | 20 cents per hour |
| August 3, 1976 | 13 cents per hour |
| June 9, 1977 | 16 cents per hour |
| October 5, 1978 | 19 cents per hour |

Source: Decision of Administrative Law Judge.

Nonetheless, on the record before us we are unable to determine whether the wage increase violated section 8(a)(5). We therefore remand the issue to the Board to determine whether the increase resulted from nondiscretionary standards and guidelines.

## III

### *Refusal to Bargain*

The ALJ and the Board found that Aaron Brothers committed a separate violation of section 8(a)(5) by refusing, in bad faith, to bargain about wages after November 9, 1978. This court must accept the Board's finding of bad faith if it is supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). When reviewing a

---

some degree of managerial discretion, 82 job classification changes and merit increases were unilateral changes in terms of employment); *N.L.R.B. v. J. P. Stevens & Co.*, 538 F.2d 1152, 1163 (5th Cir. 1976) (where employer had no tangible guidelines to determine which employees should receive merit increase, when they should receive it, or the size of the increase, grant of merit increase to 20 of 50 employees in bargaining unit a unilateral change in terms of employment); *N.L.R.B. v. Ralph Printing & Lithographing Co.*, 433 F.2d 1058, 1062–63 (8th Cir. 1970) (consultation with union not required where wage increase granted pursuant to well-established policy raising wages to maintain wage differential between skilled and unskilled workers in response to increases in minimum wage or when character of an employee's job changes, but a company policy does not qualify under exception where wage increase based on a subjective evaluation of an employee's performance), *cert. denied*, 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829 (1971); *Phil-Modes, Inc.*, 406 F.2d at 557 (shifting employee's pay from piecework basis to hourly basis not a unilateral change where the shift had occurred every year the employer had been in operation and where the beginning and end of the period were triggered each year by consumer demand, a factor beyond the employer's control); *N.L.R.B. v. Southern Coach & Body Co.*, 336 F.2d 214, 217–18 (5th Cir. 1964) (wage increase not an unilateral change where increase resulted from longstanding policy granting automatic increases according to job tenure and difficulty of job).

4. Aaron Brothers also argues that a failure to implement the October 5 wage increase would have been an unfair labor practice, placing it in the untenable position of committing an unfair labor practice whether or not it implemented the increase. This concern is unfounded. Aaron Brothers could have avoided all risk by notifying and consulting with the Union as to the course it should follow. *See N.L.R.B. v. United Aircraft Corp.*, 490 F.2d 1105, 1111 (2d Cir. 1973); *General Motors Acceptance Corp. v. N.L.R.B.*, 476 F.2d 850, 854 (1st Cir. 1973).

charge of bad faith, a court must examine the entire conduct of both sides during negotiations. *NLRB v. Insurance Agents International Union*, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960); *NLRB v. American National Insurance Co.*, 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952).

An employer fails to manifest good faith in bargaining sessions if he does not " 'participate actively in the deliberations so as to indicate a present intention to find a basis for agreement' " and does not make " 'sincere effort ... to reach a common ground.' " *NLRB v. Yutana Barge Lines, Inc.*, 315 F.2d 524, 530 (9th Cir. 1963) (quoting *NLRB v. Montgomery Ward & Co.*, 133 F.2d 676, 686 (9th Cir. 1943)). Both parties are required "to afford the other [party] a fair opportunity to exchange and discuss proposals and counter-proposals." *Id.*

The charge of bad faith made here is based principally upon the conduct of Aaron Brothers representative, John Fretwell, at the November 9 negotiating session with Union negotiator John Krasnick. After describing what had transpired at the five previous bargaining sessions, the ALJ found:

> By notice dated September 22, 1978, Respondent notified its employees companywide, including those in the bargaining unit, that they would be receiving an hourly wage increase of 19 cents, effective October 5. The Union first learned of the increase during the November 9 bargaining meeting, when Fretwell gave Krasnick a copy of the employee notice. Fretwell told Krasnick that he had asked that the increase be withheld from the unit employees, and was "embarassed" that it had not; and voiced agreement with Krasnick's accusation that the inclusion of the unit employees in the raise was an unfair labor practice. With that, Krasnick proposed that the new wage levels be used as a base for the continued negotiation of the wage issue. Fretwell declined, explaining that he was without authority to offer anything additional. Krasnick countered that he would have to file an unfair labor practice in that event, and Fretwell said he would not blame Krasnick if he did.

The ALJ concluded from these facts that Aaron Brothers' refusal to continue negotiating on wages resulted from the company's bad faith. Aaron Brothers does not dispute any of the findings made above, but contends that they do not demonstrate bad faith. It argues first that these findings show that the Union was the party responsible for breaking off negotiations. The record does not support this contention. The ALJ found that the union representative offered to continue wage negotiations using the October 5 wage increase as a base. The more plausible reading of Fretwell's response is that Aaron Brothers was not interested in negotiating the wage issue further.

Aaron Brothers argues alternatively that it was justified in breaking off wage bargaining on November 9 because the parties had reached an impasse on the wage issue. Although it is clear that "the obligation to bargain collectively does not compel either party to agree to a proposal or require the making of a concession," *American National Insurance Co.*, 343 U.S. at 404, 72 S.Ct. at 829, the record does not support a conclusion that the prospects for further compromise were nil; the parties had completed only five bargaining sessions prior to the November meeting and neither party had yet presented a "final" wage offer.

Aaron Brothers also argues that it bargained in good faith prior to November 9. The record indicates that the company actively engaged in bargaining during the negotiating sessions held prior to November 9. The record, however, also contains evidence casting doubt on the company's interest in reaching an agreement. Aaron Brothers' two month delay in informing the Union of its decision to implement the October 5 pay increase suggests that the company was prepared to circumvent the collective bargaining process by presenting the Union with a *fait accompli*. *Cf. Alfred M. Lewis, Inc. v. N.L.R.B.*, 587 F.2d 403, 409 (9th Cir. 1978) (bargaining in good faith requires not only notice to Union of pending unilateral change in working conditions, but also the opportunity to bargain.) Moreover, hearing testimony indicates that Aar-

on Brothers made a conscious decision not to inform the Union of the pending increase on the ground that the employer doubted whether the Union retained majority support. *Cf. Clear Pine Mouldings, Inc. v. NLRB*, 632 F.2d 721, 730 (9th Cir. 1980) (an employer who believes that a Union has lost majority support may petition the NLRB for decertification but may not in the interim refuse to bargain or otherwise engage in unfair labor practices).[5]

The Board's finding of bad faith in Aaron Brothers' November 9 refusal to bargain about wages is supported by substantial evidence. We therefore affirm that portion of the Board's decision, and enforce the portion of the Board's order pertaining to the refusal to bargain.

ENFORCED in part; REMANDED in part.

---

5. Aaron Brothers also argues that events that occurred after November 9 do not support a finding that the company violated the NLRA. The NLRB, however, did not rely on events after November 9 in reaching its findings, nor did it cite the company for additional unfair labor practices that may have occurred after November 9. The ALJ accepted testimony concerning the events that occurred after November 9, but did so only for the purpose of determining whether the Union waived its bargaining rights after November 9.