**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MERRILL & RING, INC., Respondent.**

No. 82–7712.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1983.

Decided April 17, 1984.

Scott Meza, N.L.R.B., Washington, D.C., for petitioner.

Lester V. Smith, Jr., Portland, Or., for respondent.

Before ANDERSON and FLETCHER, Circuit Judges, and THOMPSON,* District Judge.

---

\* Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

1. Article XX provides as follows:

   JURY DUTY

   A. Any regular employee who is required to perform jury duty, including Grand Jury duty, will be entitled to reimbursement at the straight time hourly rate of his or her regular job, including shift differential if assigned to swing or graveyard shift, for the hours necessarily lost as a result of serving on the jury; provided, however, that such reimbursement shall not exceed eight (8) hours per day or forty (40) hours per week, less pay received for jury duty. The employee will be required to furnish a signed statement from a responsible officer of the court as proof of jury service and jury pay received.

BRUCE R. THOMPSON, Senior District Judge:

The National Labor Relations Board (NLRB) petitions for enforcement of its order directed to Merrill & Ring, Inc. (Employer). This court has jurisdiction under Section 10(e) of the National Labor Relations Act (NLRA or Act), 29 U.S.C. § 160(e) (1976). The alleged unfair labor practice occurred in Port Angeles, Washington. The basis for the NLRB's order was its finding that the Employer had unilaterally instituted a change in its jury duty policy without affording the International Woodworkers of America, Local 3–90 (Union) a reasonable opportunity to bargain on the matter.

The Employer is a manufacturer of timber products in Port Angeles, Washington and is a party to a collective bargaining agreement with the Union. Article XX of the agreement is concerned with compensation for time lost as a result of jury service.[1] Until May of 1978, the Employer's day shift employees commenced work at 8:00 a.m. and finished at 4:30 p.m. At that time the schedule for day shift employees was changed to one starting at 7:00 a.m. and finishing at 3:30 p.m. This change was accomplished by agreement between the Employer and the Union. Until about 1980, employees were subpoenaed for jury service in the Clallam County Superior Court to appear at 9:15 a.m. In 1980, employees began to receive subpoenae for appearance for jury duty in the Clallam

B. Day shift mill employees will be required to report for work if their jury service ends on any day in time to permit at least four (4) hours work in the balance of their regular shift. Other shift employees will not be required to report for work on any day they have performed jury service for more than one-half day. Woods crew employees will receive jury duty pay for any day served in whole or in part.

C. Hours paid for jury duty will be counted as hours worked for the purpose of computing vacation pay, health and welfare and pension contributions and overtime.

D. The above provisions apply to employees on days they are required to report for jury duty, even though not selected to serve as jury members.

County District Court at later times, usually 10:15 a.m. or 1:15 p.m. In August, 1980, the Employer directed two employees who had been subpoenaed for jury duty in the district court at 10:15 a.m. to report for work at 7:00 a.m. and work until 9:00 a.m. It had never been the practice before this to require employees to report for work in the morning on days when they had been summoned for jury duty. It is uncontradicted that the Employer intended this new policy to apply in the future to employees summoned for jury service at 10:15 a.m. or later. The two affected employees reported for work as ordered and filed grievances under a provision of the collective bargaining agreement for nonbinding arbitration. Grievance sessions were held but were unsuccessful in resolving the dispute. During the pendency of the grievance proceedings the Union filed an unfair labor practice charge with the NLRB.

The complaint filed by the Regional Director alleged that on or about August 15, 1980, the Employer instituted a rule requiring day shift mill employees performing jury duty to work between 7:00 a.m. and 9:00 a.m. and did so without prior notice to the Union and without affording the Union an opportunity to negotiate and bargain. On the day the hearing commenced the complaint was amended by stating two charges: (1) that the Employer's acts and conduct modified Article XX of the contract without the consent of the Union, and (2) "alternatively" that the Employer's acts and conduct were without prior notice to the Union and without affording the Union an opportunity to negotiate and bargain.

The ALJ found specifically that "Article XX, the jury duty provision, is silent about the obligation of day shift employees to report for work prior to their having to report for jury duty" and that it "on its face does not preclude Respondent [Employer] from requiring the day shift employees to report for work prior to reporting for jury duty." Thus the ALJ concluded that the contract was not controlling and had not been unilaterally modified. On the second issue of the alleged unilateral change in company policy without an op-

portunity for collective bargaining on an issue suitable for collective bargaining, the ALJ found that the unilateral direction to two employees to report for work before jury service was insignificant in the light of the Employer's continued willingness to discuss and, in effect, bargain during the ensuing grievance proceedings, and there was no violation of Section 8(a)(5), 29 U.S.C. § 158(a)(5) (1976).

Both the Union and the General Counsel filed exceptions to the findings and decision of the ALJ. The decision of the NLRB reversed the ALJ on the issue that the Employer had violated Section 8(a)(5) and (1) of the Act by unilaterally instituting a policy of having day shift employees report for work before jury duty without affording the Union a reasonable opportunity to bargain. The Board declined to pass on the issue of contract modification. Its explanatory footnote states:

[4] In finding merit to these exceptions, we find it unnecessary to consider the General Counsel's and Union's alternative theory that Respondent further violated Sec. 8(a)(5) and (1) of the Act because its requirement that day-shift employees report to work prior to reporting for jury duty was a unilateral modification of the parties' collective-bargaining agreement. Since our Order restores the *status quo ante*, we find that the purpose of the Act will be better served by permitting the parties themselves to determine the meaning of their contract. Accordingly, we have expressly refused to consider or pass upon an interpretation of the parties' collective-bargaining agreement.

On the petition for enforcement the Employer filed the opening brief pursuant to Rule 24 of the Rules of the United States Court of Appeals for the Ninth Circuit, and stated the issue for review as follows:

The issue presented for review is whether substantial evidence supports the finding of the National Labor Relations Board ("Board") that the Respondent Merrill & Ring, by instructing two

employees to report for two hours of work before reporting for jury duty, unlawfully unilaterally altered its employees' terms and conditions of employment without affording the Union an opportunity to bargain.

The opening brief then argues (1) the Union never requested bargaining about the new jury policy after it was notified, (2) the Employer's duty to bargain was fulfilled by the grievance procedure meetings, (3) a failure to bargain over the jury duty policy was not unlawful because the change effected was not material or substantial. In support of the third contention, the Employer called attention to the language of Article XX of the collective bargaining agreement (footnote 1) that employees would be paid "for the hours *necessarily* lost as a result of serving on the jury." (Emphasis added.) The board responded to these contentions, and the Employer in its reply brief for the first time contended that:

> What this case really comes down to is a question of contract interpretation: were the hours from 7:00 a.m. to 9:00 a.m. "necessarily lost" within the meaning of Article XX? . . .
>
> . . . .
>
> . . . The real question, therefore, is whether the Company's interpretation of the contract was correct. The Administrative Law Judge below found that it was. Although the Board declined to address the question, it is the critical issue in this case. For if the Company's actions were within the scope of its previously negotiated agreement with the Union, then the Company had no duty to engage in any further bargaining on the subject. 29 U.S.C. § 158(d); . . . .

Thus, although the question of contract interpretation has been in the case from its beginning, the Employer's initial argument that requiring work before jury service was not precluded by the contract has now been expanded to an assertion that the new jury duty rule is affirmatively permitted by the contract. So, it is asserted that the Board erred by declining to interpret the contract. We do not agree.

The complaint as amended stated two separate and independent charges. The second charge was based on the principle that it is an unfair labor practice, a violation of Section .8(a)(5) of the Act, for an Employer, without notice and a reasonable opportunity to bargain, to initiate a material change in the established terms and conditions of employment in an area that is a compulsory subject of collective bargaining. *See N.L.R.B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Although the duty to bargain only extends to mandatory subjects of bargaining, *Fibreboard Paper Products Corporation v. N.L.R.B.*, 379 U.S. 203, 210, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964), the NLRB expressly found that the jury duty rights involved in this case are mandatory subjects of bargaining. Those findings, while not binding as a matter of law, are entitled to considerable respect because of the NLRB's expertise in the area. *See Seattle First National Bank v. N.L.R.B.*, 444 F.2d 30 (9th Cir. 1971).

We have found no reported decision by a court or by the Board, other than this case, which directly holds that agreements for compensation for jury duty are mandatory subjects of bargaining. Yet the *Katz* case, involving employer directed changes in a sick leave plan, the adoption of an automatic wage increase and the adoption of merit wage increases, held that all fall within the concept of "wages, hours and other terms and conditions of employment." Section 8(d) of the Act, 29 U.S.C. § 158(d). The statute is broadly construed to encompass any significant employment policy or practice. For example, the Board held that there was a substantial change in conditions when an employer unilaterally added five minutes to the employees' working day. *Hedison Manufacturing Co.*, 260 NLRB 590 (1982). Thus, the Board correctly treated the jury duty rights as mandatory subjects of bargaining.

■ In this case, the uniform past practice and policy had been that employees

should not be required to report for morning work on the day shift on days summoned for jury service. The Employer changed this policy with respect to those day shift employees summoned for jury duty at 10:15 a.m. or later who could work from 7:00 a.m. to 9:00 a.m. or longer and have time to return home and clean up for jury service. This was done without notification to the Union and an opportunity to bargain. The change was material and substantial which invoked the Employer's obligations under Section 8(a)(5). *See Alfred M. Lewis, Inc. v. N.L.R.B.*, 587 F.2d 403, 408 (9th Cir.1978).

■ The Employer argues that its duty to bargain never arose because the Union did not request bargaining. As the Employer indicates, it has been held that where a Union receives meaningful notice of a change in the terms and conditions of employment and fails to request bargaining on the issue, "it waives its right to complain that the employer acted in violation of Sections 8(a)(5) and (1)." *International Ladies Garment Workers Union v. N.L.R.B.*, 463 F.2d 907, 918 (D.C.Cir.1972).

Nevertheless, both the ALJ and the NLRB found that, in this case, the Union did not receive notice of the change in the Employer's jury duty policy prior to its implementation. While not totally uncontradicted, the testimony of Donald Taylor and a letter sent to Taylor on behalf of the Employer, constitute substantial evidence in support of this finding. Consequently, the change in jury duty policy was presented to the Union as a *fait accompli* and, "[s]imply put, a union cannot be found to have waived bargaining when it never had an opportunity to bargain." *Gulf States Manufacturing, Inc. v. N.L.R.B.*, 704 F.2d 1390, 1397 (5th Cir.1983).

■ The Employer also argues that, even if its duty to bargain with the Union was triggered, that duty was satisfied by its participation in the grievance proceedings. That theory has previously been rejected by this circuit. In an analogous situation it was decided that arbitration following an employer's effectuation of a change in a term or condition of employment does not serve as a substitute for bargaining over whether the prior policy should be changed in the first instance. *Alfred M. Lewis, Inc.*, 587 F.2d at 408.

■ The second separate and independent charge of unfair labor practice was that the Employer had modified Article XX of the contract without the consent of the Union. Such a charge is expressly authorized by Section 8(d) of the Act, 29 U.S.C. § 158 (d), and it is within the jurisdiction of the Board to interpret the agreement for the purpose of enforcing the statutory rights of the parties. *N.L.R.B. v. C. & C. Plywood Corp.*, 385 U.S. 421, 428, 87 S.Ct. 559, 563, 17 L.Ed.2d 486 (1967). The law, however, does not require the Board to exercise its jurisdiction in this respect. Section 10 of the Act, 29 U.S.C. § 160, prescribes the procedures for processing an unfair labor practice charge. There is nothing in the Act which requires the Board to consider and pass upon every exception to a decision of an Administrative Law Judge. Nothing in the Act requires the Board to review and affirm or disaffirm every finding and conclusion of the Administrative Law Judge. If the issues of fact upon which the Board does pass are supported by substantial evidence, and if its conclusions and order are in conformity with the law on issues that have been fully and fairly tried, it is the obligation of the Court of Appeals on proper petition to enforce the order. *N.L.R.B. v. Olympic Medical Corporation*, 608 F.2d 762 (9th Cir.1979); 29 U.S.C. § 160(e). This is such a case.

The Board's order is enforced.