Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 24, 2004          Decided March 16, 2004

No. 03–1155

VERIZON NEW YORK INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
No. 03–1180

———

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

———

*Willis J. Goldsmith* argued the cause for petitioner. On the briefs was *Marshall B. Babson*.

*Meredith L. Jason*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*,

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Deputy Associate General Counsel, and *Fred B. Jacob*, Attorney.

*Ellen Dichner* was on the brief for *amicus curiae* Communications Workers of America, Local 1103, AFL-CIO in support of respondent.

Before: RANDOLPH, ROGERS, and TATEL, *Circuit Judges*.

Opnion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: Section 8(d) of the National Labor Relations Act defines collective bargaining as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment. . . ." 29 U.S.C. § 158(d). An employer's refusal to fulfill its bargaining obligation violates § 8(a)(5) and (1) of the Act. 29 U.S.C. § 158(a)(5) & (1). The principal question in this case is whether the National Labor Relations Board properly ruled that Verizon New York Inc. violated § 8(a)(5) and (1) when it refused to bargain with the union over elimination of the company's long-standing practice of allowing employees to participate in blood drives during working hours with no loss of pay.

Verizon provides telecommunications services throughout the State of New York. The company and the Communications Workers of America, District One, are parties to state-wide collective bargaining agreements covering installers, repairmen, splicers, linemen, clerks, plant department, and other installation and maintenance employees. Local unions under the Communications Workers act autonomously within their geographic territories. The union involved in this case – Local 1103 – represented some 4,000 employees in downstate New York where the blood drives had been conducted.

Verizon at one time supported blood drives throughout its New York operations. During the 1980s and 1990s it discontinued this practice, except with respect to the area in which Local 1103 operated. There the practice continued in much the same way as it had for more than thirty years. The

company, the union and Hudson Valley Blood Services, a charitable organization, jointly established dates for the drives. Union stewards then conducted half-hour meetings, signing up volunteers and proposing specific times for their blood donations. The union forwarded these appointments to the company so that it could adjust work schedules and cover employees who would be donating blood during working hours.

Verizon and the union conducted eight blood drives annually, two each in the northern and southern regions, and four in the central region, all during working hours. In the typical blood drive, eight or nine union representatives helped check in donors, served refreshments, and took care of other administrative responsibilities. Donors spent up to four hours traveling to the site, giving blood, recovering and returning to their jobs. Approximately 1,000 unit employees – 25 percent – participated; managerial employees also took part. Employees received full pay and credit for their hours spent in donating blood and in attending the pre-drive meetings.

In February 2001 Verizon decided – according to one management official – that it would no longer permit employees to participate in the blood drives "on Company time." In the past, when technicians and other workers left their jobs to participate in blood drives, the company experienced significant problems meeting customer requests for service, especially during outages. On March 6, 2001, the company told the union of its decision. Three days later, a union steward filed a grievance complaining that the company had "bargained in bad faith by changing [its] blood donation policy without negotiating with the union." The company denied the grievance. On March 28, company and union representatives met to discuss this grievance and other grievances the union had appealed to the second step. Management orally denied the grievance, stating that the blood drive was not a term or condition of employment. The next day, March 29, Verizon sent a letter to the union's president notifying him of its change in policy. The letter stated that in the future blood drives must "take place on our employees' own time," but that the company would make its "facilities available to

you so you can hold the Blood Drives on our premises after work or on weekends when our employees are off." On April 8, the company formally denied the second step grievance in writing.

The Board found that Verizon had violated § 8(a)(5) and (1) of the Act by failing to give the union an opportunity to bargain over its decision to eliminate the blood drives during paid worktime. The blood drive program was, the Board ruled, a mandatory subject of bargaining under § 8(d) because it concerned "wages, hours, and other terms and conditions of employment." The Board also rejected the company's defense that the union had not timely requested bargaining over the change in policy and had thereby waived its bargaining rights. 339 N.L.R.B. No. 6 at 2 (May 16, 2003).

As to the latter, Verizon's claim of waiver lacks any evidentiary basis. Three days after the company announced an end to blood drives, the union filed a grievance charging the company with refusing to bargain about this matter. At the second step of the grievance process, the union again made a demand for bargaining, this time orally. 339 N.L.R.B. No. 6 at 1; *see Prime Service, Inc. v. NLRB*, 266 F.3d 1233, 1238 (D.C. Cir. 2001) ("The demand [for bargaining] may be in writing or it may be oral."). Three weeks had intervened, but that hardly constituted an undue delay on the union's part. No blood drives had been cancelled during this period; none that had been scheduled before the company's announcement were imminent; and, as Verizon's counsel admitted during oral argument, the company suffered no prejudice in the interim. Waiver of a right protected by the National Labor Relations Act must be "clear and unmistakable." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). With no imminent consequences looming, the union had no reason to act swifter than it did and, in the face of the pending grievance requesting bargaining, the company had no reason to suppose that the union had acquiesced in its change of policy. This distinguishes the several Board and ALJ decisions Verizon cites for the proposition that delays shorter than three weeks have resulted in findings that unions waived

their right to bargain. In all but one of those cases, the employer informed the union of a change in terms or conditions of employment that had to be implemented quickly. *See Diamond Walnut Growers*, 312 N.L.R.B. 61, 71 (1993) (hiring at the beginning of walnut harvest); *Vandalia Air Freight, Inc.*, 297 N.L.R.B. 1012, 1014 (1990) (takeover of company on brink of bankruptcy); *Cherokee Culvert Co.*, 266 N.L.R.B. 290, 294 (1983) (layoffs); *Salem College*, 261 N.L.R.B. 327, 337 (1982) (subcontracting); *Hartman Luggage Co.*, 173 N.L.R.B. 1254, 1255–56 (1968) (layoffs). In the remaining case, *WPIX, Inc.*, 299 N.L.R.B. 525 (1990), dealing with the employer's increasing the mileage reimbursement for employees, the union never requested bargaining.

Verizon has only one other contention regarding waiver that is worth discussing. It says that when it discontinued blood drives in other areas of New York "the Union" did not object and did not request bargaining. Brief for Petitioner at 38. There are three responses, each conclusive. First, the "union" here did not represent employees in other geographic regions. Second, the record contains no evidence about what responses the other local unions had to Verizon's change of policy in their regions. Third, a "union's acquiescence in previous unilateral changes does not operate as a waiver of its right to bargain over such changes for all time," *Owens-Corning Fiberglas Corp.*, 282 N.L.R.B. 609 (1987). *See Ciba-Geigy Pharmaceuticals Div. v. NLRB*, 722 F. 2d 1120, 1127 (3d Cir. 1983).

This brings us to Verizon's argument that the change in its blood drive policy was not a mandatory subject of bargaining under § 8(d) – that discontinuing blood drives did not alter, in the words of § 8(d), "wages, hours, and other terms and conditions of employment." There is no doubt that the policy change affected Verizon's employees, but this is not necessarily determinative. A company's shutting down part of its business to cut economic losses obviously affects its employees, yet the Supreme Court held that this was not a mandatory subject of bargaining. *First Nat'l Maintenance Corp. v. NLRB*, 452 U.S. 666, 686 (1981). To fall within that category the matter must be "plainly germane to the 'working environ-

ment' " and "not among those 'managerial decisions, which lie at the core of entrepreneurial control.' " *Ford Motor Co. v. NLRB*, 441 U.S. 488, 498 (1979) (quoting Justice Stewart, concurring, in *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 222, 223 (1964)).

Verizon's argument is that its decision to support, or not to support, a charity is a core entrepreneurial concern; that the blood drives benefitted Hudson Valley not Verizon's employees; and that ending the blood drives did not "vitally affect[ ]" the employees' wages, hours or terms and conditions of employment (quoting *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 179 (1971)). The Board did not disagree with Verizon's first point. Management certainly has the prerogative to chose whether to support charities, and which ones. But how management goes about this may be another matter. A company could not, without bargaining with the union, order employees to work for a charity during the workday without pay. Here, Verizon did not require members of Local 1103 to give blood, but the voluntary aspect of the program does not have the significance the company attributes to it. To stress, as Verizon does, that an employee's decision to participate or not to participate had no impact on his wages is to miss the point of the Board's decision. The employee's decision had no such impact because Verizon permitted employees to receive wages for time not worked – up to four hours per blood drive twice a year – and to have these non-working hours counted as worktime. On the days of the blood drives, donor-employees thus received eight hours of pay for four hours of work. The amount of pay received for the number of hours worked is surely "germane" to an individual's employment. Suppose a company had, for thirty years, allowed employees to take four hours off with pay twice a year. No one can doubt that time off with pay is a mandatory subject of bargaining. It is no less so because some employees might decide to continue working rather than leave their jobs. Employees may be entitled to paid vacations, but they are not always required to take them.

The Board has long designated the question whether "employees will be paid while they engage in nonwork activities . . . a mandatory subject of bargaining." 339 N.L.R.B. No. 6 at 2. Thus, "wages, hours and other terms and conditions of employment" include, so the Board has held, discontinuance of an extra 15 minutes paid time during Thanksgiving lunch break, *Rangaire Acquisition Corp.*, 309 N.L.R.B. 1043 (1992), *enforced*, 9 F.3d 104 (5th Cir. 1993); the ending of paid time off for jury duty, *NLRB v. Merrill & Ring, Inc.*, 731 F.2d 605 (9th Cir. 1984); adjustments in the amount of paid lunch time, *Van Dorn Plastic Mach. Co. v. NLRB*, 881 F. 2d 302 (6th Cir. 1989); the elimination of paid time on payday to cash checks, *AT&T Corp.*, 325 N.L.R.B. 150, 153 (1997); and the cancellation of a 5–minute paid washup period for maintenance workers, *Appalachian Power Co.*, 250 N.L.R.B. 228 (1980), *enforced*, 660 F.2d 488 (4th Cir. 1981). The Board's judgment that ending the blood drive program is a mandatory subject of bargaining because it concerns wages and hours fits comfortably in this line of cases.

The petition for judicial review is denied and the Board's cross-petition for enforcement is granted.

*So ordered.*