NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 24 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>v.<br><br>AIRGAS USA, LLC,<br><br>Respondent. | No. 24-6310<br><br>NLRB Nos.<br>31-CA-226568<br>31-CA-260895<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted October 8, 2025
Pasadena, California

Before: RAWLINSON, MILLER, and JOHNSTONE, Circuit Judges.

The National Labor Relations Board (NLRB or the Board) applies for

enforcement of an order issued against Airgas USA, LLC (Airgas) finding that

Airgas violated the National Labor Relations Act, 29 U.S.C. § 151 et seq. (NLRA),

by failing to provide its drivers with an annual wage increase in 2018 and by

unilaterally laying off one driver without meaningfully bargaining with the drivers'

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

24-6310

union. We have jurisdiction under 29 U.S.C. § 160(e), (f), and we grant the application for enforcement.

We must "uphold a Board decision when substantial evidence supports its findings of fact and when the agency applies the law correctly." *Kava Holdings, LLC v. NLRB*, 85 F.4th 479, 486 (9th Cir. 2023) (citation omitted).

**1.** The NLRA prohibits employers from "discrimination in regard to . . . any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3) (Section 8(a)(3)). An employer also engages in an unfair labor practice if it refuses to bargain collectively with its employees regarding the terms and conditions of employment. *See* 29 U.S.C. § 158(a)(5) (Section 8(a)(5)).[1]

Wage increases or bonuses are considered a term or condition of employment "if they are of such a fixed nature and have been paid over a sufficient length of time to have become a reasonable expectation of the employees and, therefore, part of their anticipated remuneration." *NLRB v. Nello Pistoresi & Son, Inc.*, 500 F.2d 399, 400 (9th Cir. 1974) (citations omitted). "Wage changes that merely reflect continuations of past company policy are not considered changes in

---

[1] "Any violation of Section 8(a)(3) or 8(a)(5) necessarily includes a derivative violation of Section 8(a)(1)." *NLRB v. Swedish Hosp. Med. Ctr.*, 619 F.2d 33, 35 (9th Cir. 1980) (citation omitted).

existing work conditions" that would require bargaining under Section 8(a)(5). *Aaron Bros. Co. v. NLRB*, 661 F.2d 750, 753 (9th Cir. 1981) (citations omitted).

Substantial evidence supports the Board's determination that Airgas violated Section 8(a)(3) by withholding an established wage increase, with Airgas motivated at least in part by anti-union animus. Airgas's vice president of operations testified that he annually ensured that newer drivers received an increase to retain strong performers, and then distributed the remaining available funds to more senior drivers. This practice is borne out in the data showing that drivers who had worked on the job for at least one year since 2011 generally received a $1 per hour wage increase each year from 2014-2017, while drivers hired within the last year or before 2011 generally received an across-the-board raise of between $0.50-$0.60 each year.

Substantial evidence also supports the Board's finding of anti-union animus. *See Kava Holdings*, 85 F.4th at 486-87 (explaining that the General Counsel's initial burden requires showing employer animus against protected activity). Airgas managers made multiple statements to drivers indicating that union participation would negatively affect drivers' ability to receive wage increases, including repeatedly reminding drivers that "October is coming," stating that the drivers had been "this close to getting a raise but would now get nothing," and informing the drivers that the managers couldn't "help . . . with raises" if the

drivers "vote[d] the union in." Airgas also granted a wage increase to its production employees who did not unionize, while withholding an increase from its truck drivers who did. Because the Board made a finding of anti-union animus, the burden shifted "to the employer to demonstrate that the same action would have taken place even in the absence of protected conduct." *Healthcare Emps. Union, Loc. 399 v. NLRB*, 463 F.3d 909, 919 (9th Cir. 2006) (citation omitted). Airgas failed to do so, pointing only to after-the-fact offers to bargain over wages and other economic issues. Airgas also has no viable defense under *NLRB v. Katz*, 369 U.S. 736, 746 (1962), because the wage increase would constitute a continuation of the status quo, and thus would not trigger a duty to bargain under Section 8(a)(5). *See Aaron Bros.*, 661 F.3d at 753.

**2.** Substantial evidence supports the Board's determination that Airgas fired a driver without engaging in bargaining, and that Airgas's letter to the union announcing the firing presented no genuine bargaining opportunity. "[W]here a Union receives meaningful notice of a change in the terms and conditions of employment and fails to request bargaining on the issue, it waives its right to complain that the employer acted in violation of Sections 8(a)(5) and (1)." *NLRB v. Merrill & Ring, Inc.*, 731 F.2d 605, 609 (9th Cir. 1984) (citation and internal quotation marks omitted). However, if an employer presents a *fait accompli*, "a

union cannot be found to have waived bargaining when it never had an opportunity to bargain." *Id*. (citation omitted).

Airgas sent the Union a letter dated April 24, 2020, stating that the employee would "be separated effective end of the day Wednesday, April 29"—a mere five days later. Although this letter asserted that Airgas was "willing to bargain over any aspect of this layoff procedure," the Board reasonably concluded that Airgas was not offering to bargain over the layoff itself. Indeed, the exchange between Airgas and the Union attorney discussed only whether the separated employee would receive severance or recall rights, not whether he would be separated at all. Substantial evidence supports the Board's finding that the layoff was thus a *fait accompli*, providing the union no "opportunity to bargain." *Id.*

Airgas does not challenge enforcement of the Board's other determinations, so we summarily enforce those parts of the Board's order.

The Board's application to enforce its order is **GRANTED.**