# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 6, 2017               Decided April 25, 2017

No. 15-1327

BELLAGIO, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 15-1390

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Paul T. Trimmer* argued the cause and filed the briefs for petitioner.

*Rebecca J. Johnston*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Richard F. Griffin*, *Jr.*, General Counsel, *Jennifer Abruzzo*, Deputy General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Meredith L. Jason*, Deputy Assistant General Counsel. *Kira D. Vol*, Attorney, National Labor Relations Board, entered an appearance.

Before: BROWN, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: The petition for review in this case, filed by Bellagio, LLC ("Bellagio" or "Company"), challenges a Decision and Order issued by the National Labor Relations Board ("NLRB" or "the Board"). The Board determined that Bellagio violated section 8(a)(1) of the National Labor Relations Act ("NLRA" or "the Act") when it interfered with employee Gabor Garner's right to have a union representative present during an investigatory meeting; retaliated against him for invoking that right by placing him on "Suspension Pending Investigation" ("SPI"); unlawfully surveilled Garner after placing him on SPI; and then coercively prevented him from discussing his suspension with other employees. The Board ordered Bellagio to cease and desist from these activities, post a notice informing employees of the violations, and pledge not to repeat them. *Bellagio, LLC*, 362 NLRB No. 175 (2015).

Bellagio contends that the Board's determinations should be vacated because they are inconsistent with established precedent and not supported by substantial evidence. It also asserts that the Board violated the Company's due process rights in finding that a Company supervisor engaged in coercive conduct to compel Garner not to speak with coworkers about his discipline because this was not among the charges in the complaint that had been issued against Bellagio. We find that Bellagio's contentions are meritorious. We therefore grant in full the petition for review and deny the Board's cross-application for enforcement.

## I. Background

At the time of the events giving rise to this dispute, Garner was a bellman at Bellagio, a hotel in Las Vegas, Nevada. As a bellman, Garner was represented by the Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local 226, and Bartenders Union, Local 156 ("Union"), affiliated with UNITE HERE. Garner's job duties included greeting arriving guests, assisting them with their luggage, and escorting departing guests from the hotel. Bellagio expects its bellmen to treat customers with courtesy and respect at all times, and forbids them from soliciting tips.

On May 12, 2013, a guest complained that Garner had inappropriately attempted to solicit a tip and, when the customer did not oblige, Garner allegedly responded with a sarcastic comment. The next day, shortly before Garner's shift was to end, Front Services Supervisor Brian Wiedmeyer summoned him to a meeting regarding the customer's complaint. Max Sanchez, another supervisor, also attended as a witness. Garner asked Wiedmeyer whether the meeting could result in discipline. Wiedmeyer told him that it might, at which point Garner requested a Union representative. Wiedmeyer requested that Garner provide a statement describing the incident, but Garner declined to do so without a representative present.

When Garner declined to contact a representative himself, Wiedmeyer and Sanchez left the meeting in search of a Union agent. However, neither Wiedmeyer, Sanchez, nor Company representatives in the Employee Relations department could locate a Union representative. Wiedmeyer then returned to the meeting room and again asked Garner to fill out a statement, but Garner refused to do so without a

Union representative present. Wiedmeyer then placed Garner on SPI and told him that he had to leave the premises.

Garner exited the meeting and walked into the dispatch area. This is a heavily-trafficked location on Bellagio premises where bellmen store their belongings and wait for assignments. Most of the customers' luggage at the hotel also passes through the dispatch area, and it is common for employees to enter the area throughout the day. While gathering his personal belongings, Garner started to tell another bellman about his meeting with Wiedmeyer and the resulting SPI. At that point, Wiedmeyer entered the room, told Garner that he could not discuss the matter at that time, and once again instructed him to leave the hotel. Wiedmeyer then followed Garner to ensure that he was heading towards the building's exit.

Later that day, Bellagio contacted Garner to schedule a disciplinary meeting. The next morning, Garner and a Union steward attended a meeting with Front Services Director Charles Berry and Employee Relations Manager Susan Moore. Garner completed a statement, received a verbal warning, and then returned to his job. As a result of the SPI, Garner missed a short amount of work, for which he was fully compensated.

Garner subsequently filed an unfair labor practice charge with the NLRB. The Board's General Counsel issued a complaint against the Company, alleging that it had violated the Act by conducting an investigatory interview after Garner had invoked his right under *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), to have a Union representative present. The complaint also charged Bellagio with retaliating against Garner for invoking his *Weingarten* right; unlawfully surveilling him; and promulgating an overly broad rule

prohibiting employees from discussing disciplinary matters that were under investigation. Following a hearing, an Administrative Law Judge ("ALJ") issued findings that Bellagio had indeed committed the unfair labor practices as alleged.

The Board adopted the ALJ's findings on all but one charge. It held that Wiedmeyer did not promulgate an unlawful rule when he instructed Garner not to discuss his SPI in the dispatch area. Instead, the Board found that Wiedmeyer had "engaged in coercive conduct to compel Garner to cease speaking to coworkers about his discipline." *Bellagio, LLC*, 362 NLRB No. 175, at 1 n.3. The Board adopted the ALJ's Order requiring the Bellagio to cease and desist from its unfair labor practices and post a notice informing employees of these violations and promising not to repeat them.

The Company petitioned for review of the NLRB's Decision and Order, and the Board cross-applied for enforcement. We have jurisdiction to decide this case pursuant to 29 U.S.C. §§ 160 (e) and (f).

## II. Analysis

### A. *Standard of Review*

Our role in reviewing an NLRB decision is deferential and limited. "We must uphold the judgment of the Board unless, upon reviewing the record as a whole, we conclude that the Board's findings are not supported by substantial evidence, or that the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Wayneview Care Ctr. v. NLRB*, 664 F.3d 341, 348 (D.C. Cir. 2011) (quoting *Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000)). Substantial evidence requires

enough "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Micro Pac. Dev. Inc. v. NLRB*, 178 F.3d 1325, 1329 (D.C. Cir. 1999) (citation omitted). Thus, a court's duty is not to impose its own preferred judgment, but to reverse the Board "only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 935 (D.C. Cir. 2011) (citations and quotations omitted).

**B.** ***Bellagio Did Not Violate Garner's* Weingarten *Right to Union Representation***

The Board determined that Bellagio deprived Garner of his right to union representation under *Weingarten*, and thus violated section 8(a)(1) of the Act, when Wiedmeyer asked Garner to fill out a written statement after the employee had requested a Union representative. This conclusion finds no support in the applicable law.

Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7 of the Act. 29 U.S.C. § 158(a)(1). More than forty years ago, the Supreme Court held that the Board's determination that section 7 "creates a statutory right in an employee to refuse to submit without union representation to an interview which he reasonably fears may result in his discipline" was a permissible construction of the Act. *Weingarten*, 420 U.S. at 256, 260. The right is not absolute, however, because it "may not interfere with legitimate employer prerogatives." *Id.* at 258. Therefore, in assessing a situation to determine whether *Weingarten* has been violated, the Board must take account of the context in which a request for union representation has been made. The situations are highly variable because, once

an employee validly requests a union representative, an employer has three paths open to it: it may grant the request, end the interview, or offer the employee the choice between having an interview without a representative or having no interview at all. *Washoe Med. Ctr., Inc.*, 348 NLRB 361, 361 n.5 (2006); *see Weingarten*, 420 U.S. at 258–59. In other words, the mere fact that an employee's request for union representation is not met does not, without more, mean that the employer has committed an unfair labor practice.

There is no dispute here that Garner reasonably believed that the meeting with Wiedmeyer and Sanchez might lead to discipline, and that he made a valid request for representation. The Board determined that the Company violated the Act because, after Garner invoked his *Weingarten* right, "Wiedmeyer continued to press Garner to complete a statement." *Bellagio, LLC*, 362 NLRB No. 175, at 2. We disagree because the Board's finding rests on a perverse reading of the record. What the record shows is that the actions of Bellagio's supervisors were fair, reasonable, and entirely consistent with *Weingarten*.

After Garner asked for a Union representative, Bellagio's supervisors worked diligently to comply with this request. Wiedmeyer first invited Garner to contact a Union agent himself, but the employee declined to do so. Wiedmeyer and Sanchez then left the room and attempted to locate a Union representative. The supervisors sought help from the Employee Relations department, but to no avail. Wiedmeyer then returned to the meeting room in which Garner was waiting. Before ending the interview, Wiedmeyer first gave Garner the option to fill out a written statement. Garner refused to do so. Wiedmeyer then placed Garner on SPI. In other words, Garner was suspended *with pay*, and instructed to leave the work place, pending further investigation by the

Company. That further investigation occurred the next day and it included an interview with Garner and his Union representative.

It is clear that the Company never resisted or undermined Garner's invocation of his right to seek union representation. There is no suggestion that Bellagio's supervisors threatened or intimidated Garner. Indeed, Garner testified that Wiedmeyer stopped asking questions after he requested a Union representative. Wiedmeyer simply took *Weingarten*'s third path and offered Garner "the choice between having an interview unaccompanied by [a] representative, or having no interview and forgoing any benefits that might be derived from one." 420 U.S. at 258. Such lawful behavior cannot sustain an unfair labor practice finding.

Because Bellagio's supervisors acted reasonably and in compliance with *Weingarten*, we reverse the Board on this count.

## C. *Bellagio Did Not Unlawfully Retaliate Against Garner*

We also reverse the Board's determination that Bellagio retaliated against Garner in violation of section 8(a)(1) when it placed him on SPI after he invoked his *Weingarten* right.

It is well settled that an employer violates the Act when it retaliates against an employee for engaging in protected activity. *See Tasty Baking Co. v. NLRB*, 254 F.3d 114, 125 (D.C. Cir. 2001). The Board analyzes the question of unlawful retaliation by applying the test enunciated in *Wright Line*, 251 NLRB 1083 (1980). *See NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401–04 (1983) (approving the *Wright Line* test). "Under that test, the General Counsel must first 'make a prima facie showing sufficient to support the

inference that protected . . . conduct was a motivating factor in [an] . . . adverse action.'" *Tasty Baking Co.*, 254 F.3d at 125 (quoting *TIC-The Indus. Co. Se. v. NLRB*, 126 F.3d 334, 337 (D.C. Cir. 1997)). A finding of unlawful retaliation thus requires a predicate determination that an employer took an adverse action. Adverse acts are those that reduce a worker's prospects for employment or continued employment, or worsen some legally cognizable term or condition of employment. *See Ne. Iowa Tel. Co.*, 346 NLRB 465, 476 (2006). Garner was not the subject of any "adverse action." Therefore, the Board erred in concluding that Bellagio retaliated against Garner in violation of section 8(a)(1).

The SPI form given to Garner stated, in relevant part:

You are being placed on Suspension Pending Investigation effective 5/13/13. *This is not a disciplinary action*; it is a process that Bellagio utilizes to remove you from the work place in order to investigate a serious situation or policy infraction in which you may have been involved.
. . .

Upon the completion of the investigation process, one of the following things will occur:

1. You will be returned to work without disciplinary action and compensated for the scheduled shifts missed resulting from the suspension pending investigation . . . ; or

2. You will be returned to work with disciplinary action if warranted based on the outcome of the investigation and

possibly no compensation; or

3. You will be separated from the company if warranted based on the outcome of the investigation.

Deferred Joint Appendix ("JA") 306 (emphasis added and omitted). Although, as the form indicates, the action is called "Suspension Pending Investigation," this does not indicate that Bellagio actually took disciplinary action against Garner when it issued the SPI. *Id.* Rather, the SPI merely confirmed that the matter at issue was pending final resolution. And there is nothing to indicate that the SPI had a negative impact on Garner's employment situation or job prospects. *See Ne. Iowa Tel. Co.*, 346 NLRB at 476.

The form clearly states that SPIs are not disciplinary. Susan Moore, Bellagio's Employee Relations Manager, testified that SPIs are not a part of any system of progressive discipline. And she further explained that the Company does not keep track of SPIs in its employee files. Although the SPI form indicates that an employee might face discipline once a pending investigation is concluded, the issuance of an SPI does nothing more than confirm that a matter is under investigation. Therefore, the issuance of an SPI, without more, does not have any adverse impact on the employee who receives the form.

The fact that Garner was required to leave the hotel did not render the SPI an adverse action. It is reasonable for an employer to remove an employee from the workplace while that employee is being investigated for alleged misconduct. If, for example, an employee was accused of attacking a customer, and claimed self-defense, the employer would

clearly be entitled to remove that employee pending an investigation. The same principle applies in this case.

The Board found that Bellagio's actions had a "chilling effect on the exercise of [Garner's] *Weingarten* right." *Bellagio, LLC*, 362 NLRB No. 175, at 3. The record does not support this conclusion. In fact, the record indicates that Garner was anything but "chilled," either during the interview or after being placed on SPI. He did not hesitate to request Union representation; he insisted that the Company supervisors find a Union agent because he declined to do so; he did not waffle in his refusal to talk without Union representation; and he did not hesitate in saying that he would not give a statement. Even when Wiedmeyer placed him on SPI, Garner did not relent, and before leaving the premises he registered a complaint with Bellagio's Employee Relations department. Garner also understood that he would have Union representation when he met with the supervisors the following day. And, he was fully aware before being placed on SPI that a customer had complained about his behavior and that he was being investigated for the alleged misconduct.

There is nothing in the record to suggest that Garner was surprised or otherwise intimidated during his interactions with the supervisors. Indeed, he had good reason to understand that no adverse action was being taken against him when he was asked to leave the premises, and that none would be taken against him before an investigation was completed. He also knew that the delay in the investigation was a result of his lawful insistence on Union representation. And Bellagio worked quickly to resolve the issue, holding an appropriate disciplinary meeting the morning after placing Garner on SPI. Afterwards, Garner went back to his job as normal, albeit with a verbal warning because of his actions, and the Company fully compensated him for the short amount of work that he

missed. This is not the story of an employee who suffered "chilling effects" when Bellagio exercised its "legitimate employer prerogatives."

In defense of its position, the Board points to decisions which it asserts stand for the proposition that actions that are not "disciplinary" may nevertheless be "adverse." *See* Br. for NLRB at 23–24. But the circumstances here bear little resemblance to the cases upon which the Board relies. Most of the decisions involve employees who suffered material changes in the terms and conditions of their employment. *E.g.*, *Tasty Baking Co.*, 254 F.3d at 129–30 (employee transferred to the night shift); *Southwire Co. v. NLRB*, 820 F.2d 453, 464 (D.C. Cir. 1987) (employees confined to their work stations and forbidden from speaking to other employees). In this case, Garner's job status was not adversely affected by the issuance of an SPI. We can find no case law that supports the Board's position in this case. In any event, the record in this case makes it clear that the Board erred in finding that Bellagio retaliated against Garner.

## D. *Bellagio Did Not Engage in Unlawful Surveillance*

The Board additionally adopted the ALJ's determination that Wiedmeyer engaged in unlawful surveillance when he "aggressively" observed Garner in the dispatch area and then watched him exit the building. This finding borders on absurd, and it is certainly not supported by substantial evidence.

As we explained in *Parsippany Hotel Management Co. v. NLRB*,

> Section 8(a)(1) of the NLRA makes it "an unfair labor practice for an employer to interfere with,

> restrain, or coerce employees in the exercise of the[ir] right[ ]" to self-organize. The courts have held that an employer's conduct violates Section 8(a)(1) if it creates the impression among employees that they are subject to surveillance. This prohibition against surveillance does not prevent employers from observ[ing] public union activity, particularly where such activity occurs on company premises so long as the employer does not engage in conduct that is so out of the ordinary that it creates the impression of surveillance.

99 F.3d 413, 420 (D.C. Cir. 1996) (citations and quotation marks omitted).

In determining whether an employer's observation of employees crosses the line into unlawful surveillance, the Board must look to "the duration of the observation, the employer's distance from its employees while observing them, and whether the employer engaged in other coercive behavior during its observation." *Aladdin Gaming, LLC*, 345 NLRB 585, 586 (2005), *enf'd sub nom. Local Joint Exec. Bd. of Las Vegas v. NLRB*, 515 F.3d 942 (9th Cir. 2008).

There are simply no facts supporting the Board's holding that Wiedmeyer unlawfully surveilled Garner. He observed Garner in the dispatch room, a heavily-trafficked area located on Company property. Wiedmeyer's presence in the dispatch area was not "out of the ordinary," *Parsippany Hotel*, 99 F.3d at 420 (quoting *Gold Coast Rest. Corp. v. NLRB*, 995 F.2d 257, 266 (D.C. Cir. 1993)), because as Front Services Supervisor his job duties sometimes required him to be there. His observation of Garner was also very brief – they exchanged a few words, and then Wiedmeyer observed him to ensure that he was heading towards the building's exit.

Wiedmeyer's behavior was qualitatively different from cases in which the Board has found unlawful surveillance. In *Parsippany Hotel*, for example, we upheld the Board's finding of unlawful surveillance where, in the run-up to a representation election, the employer increased the size of its security force, identified union organizers to the guards, and there was extensive testimony by employees that they were constantly observed for extended periods of time. *Id.* at 419–20. In *Sands Hotel & Casino*, the employer assigned guards to watch employees, including placing one guard in an upstairs hotel room with binoculars. 306 NLRB 172, 189 (1992), *enf'd sub nom. mem. S.J.P.R., Inc. v. NLRB*, 993 F.2d 913 (D.C. Cir. 1993). And in *Eddyleon Chocolate Co.*, the company president questioned multiple employees about rumors of their support for the union, watched employees from his car while speaking into his phone, and later called the police on a leafletting union representative. 301 NLRB 887, 887–88 (1991). All Wiedmeyer did in this case was briefly observe Garner in a common area where Wiedmeyer had every right to be.

Wiedmeyer's actions are analogous to situations in which the Board has found that employers did not engage in unlawful surveillance. *See Aladdin Gaming, LLC*, 345 NLRB at 585–86 (supervisor observed employees for two minutes in an open area, and then spoke against the union for eight minutes); *Metal Indus., Inc.*, 251 NLRB 1523, 1523 (1980) (observation of employees at place and time where management was often present was lawful). As in these cases, Wiedmeyer's observation of Garner was routine, and there is nothing to indicate that it was "aggressive," "coercive," or "out of the ordinary." We therefore reverse the Board's finding on this point.

**E.**  *The Finding of Unlawful Coercion Cannot Stand*

Finally, we reverse the Board's holding that Wiedmeyer engaged in unlawful coercion by telling Garner not to discuss his SPI. Bellagio was not charged with any such unfair labor practice, and in any event the Board's finding is not supported by substantial evidence.

A complaint filed by the General Counsel must include "[a] clear and concise description of the acts which are claimed to constitute unfair labor practices." 29 C.F.R. § 102.15(b). The Board may not find and remedy a violation of the Act not specified in the complaint unless "the issue is closely connected to the subject matter of the complaint and has been fully litigated." *Casino Ready Mix, Inc. v. NLRB*, 321 F.3d 1190, 1200 (D.C. Cir. 2003) (quoting *Pergament United Sales*, 296 NLRB 333, 334 (1989), *enf'd* 920 F.2d 130 (2d Cir. 1990)). The Board has held that to do otherwise "would violate fundamental principles of procedural due process, which require meaningful notice of a charge and a full and fair opportunity to litigate it." *Lamar Cent. Outdoor*, 343 NLRB 261, 265 (2004).

The General Counsel charged Bellagio with promulgating an overly broad oral rule prohibiting employees from discussing their discipline. This continued to be the General Counsel's theory throughout the hearing before the ALJ. During cross-examination, Bellagio elicited from Garner testimony that, following the events in question, he had frequently discussed discipline while at work, and did not feel that it was forbidden activity. This testimony effectively undercut the General Counsel's charge, and no other evidence was offered to support any finding that Bellagio had adopted a broad oral rule prohibiting employees from discussing their

discipline. Nonetheless, the ALJ recommended that the charge against the Company be sustained.

In its consideration of the case, the Board modified the charge against Bellagio. The Board held:

> Although we agree that Wiedmeyer's instruction [to Garner] violates Sec. 8(a)(1), we do not find, as did the [ALJ], that this instruction constituted the promulgation of an oral rule. Rather, we find that Wiedmeyer[] engaged in coercive conduct to compel Garner to cease speaking to coworkers about his discipline. *See Food Services of America*, 360 NLRB No. 123 slip op. at 5 fn. 11 (2014). We will modify the judge's order to reflect this rationale.

*Bellagio, LLC*, 362 NLRB No. 175, at 1 n.3. It is clear that Bellagio never had an opportunity to defend itself against this charge because it was not in the complaint issued by the Board's General Counsel and it was not an issue in the case that was tried before the ALJ. Although the Company thoroughly cross-examined Garner, it did so without the knowledge that it might be found liable for the charge later credited by the Board. Therefore, the Board's finding must be set aside.

Even if the General Counsel had properly included this allegation in the complaint against Bellagio, we would still reverse the Board's finding because it is not supported by substantial evidence. When Wiedmeyer approached Garner in the dispatch area and instructed him to stop his discussion, the supervisor did not engage in coercive conduct to compel Garner to cease speaking to coworkers about his discipline. Wiedmeyer was simply enforcing the valid SPI that he had issued to Garner. As noted above, given the circumstances in

this case, it was perfectly reasonable for the Company to instruct Garner to leave the workplace pending investigation of his alleged wrongdoing.

### III.  Conclusion

For the reasons stated above, we grant Bellagio's petition for review and deny the Board's cross-application for enforcement.