**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOCAL JOINT EXECUTIVE BOARD OF
LAS VEGAS; CULINARY WORKERS
UNION LOCAL #226, and
BARTENDERS UNION LOCAL 165,
AFL-CIO,
                    *Petitioners,*

REORGANIZED AG, LLC,
                    *Intervenor,*

            v.

NATIONAL LABOR RELATIONS
BOARD,
                    *Respondent.*

No. 05-75515

NLRB Nos.
28-CA-18851
28-CA-19017

OPINION

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted
October 16, 2007—San Francisco, California

Filed January 28, 2008

Before: Jane R. Roth,* Sidney R. Thomas, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

———————

*The Honorable Jane R. Roth, Senior United States Circuit Judge for
the Third Circuit, sitting by designation.

## COUNSEL

Kristin Martin (argued), Richard G. McCracken, Davis, Cowell, & Bowe, LLP, San Francisco, California, for petitioner Local Joint Executive Board of Las Vegas.

David A. Seid, Attorney, National Labor Relations Board, Washington, D.C., for the respondent.

Brian Herman (argued), Mark J. Ricciardi, Fisher & Phillips, LLP, Atlanta, Georgia, for intervenor Reorganized Aladdin Gaming, LLC.

## OPINION

CALLAHAN, Circuit Judge:

Local Joint Executive Board of Las Vegas, the Culinary Workers Unions Local 226, and the Bartenders Unions, Local 165, AFL-CIO ("the Unions"), petition this court for review of a decision by the National Labor Relations Board ("the Board") reversing the Administrative Law Judge's ("ALJ") conclusion that agents of Aladdin Gaming, LLC,[1] ("the Company") engaged in illegal surveillance in violation of Section 8(a)(1) of the National Labor Relations Act ("NLRA" or "the Act"). We deny the Unions' petition for review.

## FACTS

The Company operates a hotel and casino in Las Vegas, Nevada. On May 30, 2003, the Unions began an open campaign to organize the housekeeping, food, and beverage departments. During the organizing campaign that followed, the Company committed some unfair labor practices that are not at issue in this case. The issue in this appeal is whether two incidents where human resources managers interrupted employees who were discussing union cards in an open dining room constitute unlawful surveillance under Section 8(a)(1).

The first incident involved Tracy Sapien, the Company's

---

[1] Aladdin Gaming is now known as Reorganized AG, LLC.

vice-president of human resources, and two employees who were also union organizers, Sheri Lynn and Julie Wallack. All employees, including supervisors and managers, can eat in an employee dining room provided by the Company. On June 4, 2003, Ms. Lynn and Ms. Wallack were having lunch together in the employee dining room. During their lunch break, the organizers approached a number of buffet servers at the table next to them to ask whether they would like to sign union cards. After observing Ms. Wallack and Ms. Lynn briefly, Ms. Sapien, who was also eating lunch in the dining room, approached the buffet servers. Ms. Sapien interrupted the organizers and said to the servers, "I would like to make sure you have all of the facts before you sign that card." Sapien told the buffet servers that before signing a union card, they should understand that what they were signing was "legal and binding," and that if the Union ever became the collective-bargaining representative, the "card authorizes union dues to start coming out of [the card signer's] paycheck." Ms. Lynn assured Ms. Sapien that she had given the buffet servers all the facts. There was then a brief conversation about union benefits including insurance, and Ms. Sapien offered her opinion that even if the union organizing campaign was successful, there was no guarantee that the hotel employees would get different medical insurance. Ms. Sapien told the servers that union dues were $32.50 a month, and Ms. Lynn indicated that she had already told the servers about dues. Then Ms. Sapien said that it "looked like [Lynn] had all [her] bases covered," and walked away. Ms. Wallack testified that the conversation with Ms. Sapien lasted about eight minutes.

Ms. Sapien ordinarily eats lunch in the employee dining room, but normally sits with human resources employees. She does not usually sit with uniformed employees. She acknowledged that as she approached the table to talk to the servers, she was aware that they were talking about signing union cards. Ms. Sapien testified that she approached the employees with the intention of giving them "the facts."

The second incident involved Stacey Briand, the Company's director of human resources; Azucena Felix, a union committee leader; and Adelia Bueno, a housekeeper. On June 6, 2003, Ms. Felix was speaking to a table of housekeepers in the employee dining room at Ms. Bueno's request. As Ms. Bueno was signing a union card, Ms. Briand came over to the table. Ms. Briand said Ms. Bueno "shouldn't be signing things that she wasn't sure about, because what she was signing was something like a contract, and that [Felix] was probably promising something that [Felix] wasn't going to be able to give her." Because Ms. Bueno did not understand English very well, Ms. Felix translated Ms. Briand's comments into Spanish. Ms. Briand asked what Ms. Felix was saying, and Ms. Felix explained that she merely translated Ms. Briand's statements for Ms. Bueno. Ms. Briand then left the table.

## STANDARD OF REVIEW

The Board's interpretation of the Act is accorded considerable deference as long as it is "rational and consistent" with the statute. *NLRB v. Calkins*, 187 F.3d 1080, 1085 (9th Cir. 1999); *NLRB v. United Union of Roofers, Waterproofers & Allied Workers, Local 81*, 915 F.2d 508, 510 (9th Cir. 1990) (deferring to the Board's interpretation of the Act "if it is reasonably defensible."). Decisions of the NLRB will be upheld on appeal if the findings of fact are supported by substantial evidence and if the agency correctly applied the law. *Retlaw Broadcasting Co. v. NLRB*, 172 F.3d 660, 664 (9th Cir. 1999).

"The substantial evidence test compels us to evaluate the entire record, although we may not 'displace the NLRB's choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] de novo.' " *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000) (quoting *Walnut Creek Honda Assocs. 2, Inc. v. NLRB*, 89 F.3d 645, 648 (9th Cir. 1996)). "If 'there are conflicting interpretations of the facts, and the one adopted by the Board is supported by substantial evidence,'

we may not substitute our own interpretation." *UAW v. NLRB*, 834 F.2d 816, 822 (9th Cir. 1987) (quoting *NLRB v. Anchorage Times Pub. Co.*, 637 F.2d 1359, 1363 (9th Cir. 1981)). "Indeed, we must enforce the Board's judgment if, given the record, a reasonable jury could reach the same conclusions." *Id.*

## DISCUSSION

**[1]** Section 8(a)(1) of the NLRA states that "[i]t shall be an unfair labor practice for an employer — (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). The Board has interpreted Section 8(a)(1) to make observation of union activity unlawful, "if the observation goes beyond casual and becomes unduly intrusive." *Kenworth Truck Co., Inc.*, 327 N.L.R.B. 497, 501 (1999); *see also Cal. Acrylic Indus. v. NLRB*, 150 F.3d 1095, 1099-1100 (9th Cir. 1998) (noting unlawful surveillance tends to create fear of reprisal and chill the exercise of Section 7 rights). "[M]anagement officials may observe public union activity, particularly where such activity occurs on company premises, without violating Section 8(a)(1) of the Act, unless officials do something out of the ordinary." *Metal Industries, Inc.*, 251 N.L.R.B. 1523, 1523 (1980). "The test for determining whether an employer engages in unlawful surveillance or whether it creates the impression of surveillance is an objective one and involves the determination of whether the employer's conduct, under the circumstances, was such as would tend to interfere with, restrain or coerce employees in the exercise of the rights guaranteed under Section 7 of the Act." *The Broadway*, 267 N.L.R.B. 385, 400 (1983).

**[2]** The NLRB refined the objective test for surveillance by announcing that, "[i]ndicia of coerciveness include the duration of the observation, the employer's distance from its employees while observing them, and whether the employer engaged in other coercive behavior during its observation."

*Aladdin Gaming, LLC*, 345 N.L.R.B. No. 41 at *2, 178 L.R.R.M. (BNA) 1288 (2005). We determine that this three-factor test is "rational and consistent" with the NLRA, and accordingly, we defer to the Board's interpretation of when surveillance becomes coercive and the application of the test to these facts. *Calkins*, 187 F.3d at 1085. By announcing factors to consider when deciding when otherwise lawful observation becomes coercive, the Board exercised its "primary power of interpretation and application of the Act" granted by Congress. *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 240 (1971); *see also Marine Eng'rs Beneficial Ass'n v. Interlake S.S. Co.*, 370 U.S. 173, 178 (1962) (noting that the NLRB interprets and applies statutory definitions in addition to adjudicating the applicability of the Act to substantive conduct).

[3] In addition, the NLRB found that the views expressed by Ms. Sapien and Ms. Briand were protected under Section 8(c) of the NLRA.[2] "Section 8(c) of the Act specifically prohibits [the Board] from finding that an uncoercive speech, whenever delivered by the employer, constitutes an unfair labor practice." *Livingston Shirt Corp.*, 107 N.L.R.B. 400, 405 (1953). The Supreme Court has stated that "an employer's free speech right to communicate his views to his employees is firmly established and cannot be infringed by a union or the Board." *NLRB v. Gissel Packing Co., Inc.*, 395 U.S. 575, 617 (1969). "Thus, an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain 'a threat of reprisal or

---

[2]Section 8(c), states:

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c).

force or promise of benefit.' " *Id.* at 618. Of course, "[a]ny assessment of the precise scope of employer expression . . . must be made in the context of its labor relations setting. Thus, an employer's rights cannot outweigh the equal rights of the employees to associate freely, as those rights are embodied in § 7 and protected by § 8(a)(1) and the proviso to § 8(c)." *Id.* at 617.

**[4]** There is no evidence that either Ms. Sapien or Ms. Briand used threats, force, or promises of benefits that would strip their speech of the protections of Section 8(c). Ms. Sapien attempted to give the buffet servers additional facts to consider before signing the union cards. Ms. Briand told Ms. Felix that Ms. Bueno should not sign a union card without fully understanding the consequences and provided her opinion that the union may not be able to deliver on its promises. Ms. Felix voluntarily translated Ms. Briand's comments for Ms. Bueno. After Ms. Felix explained the translation, Ms. Briand left.

The unions do not contend that the observations of organizing activity by Ms. Sapien or Ms. Briand were unlawful by themselves. The unions argue that the interruption of protected union activity, even to express opinions protected by Section 8(c), makes the otherwise lawful observation unlawful. The Board characterized the facts in this case as being closer to those in *Metal Industries*, 251 N.L.R.B. at 1523, and distinguished other cases involving more coercive behavior. *Aladdin Gaming, LLC*, 345 N.L.R.B. No. 41 at *2. In *Metal Industries*, the Board dismissed an unlawful surveillance claim when management officials "regularly stationed themselves in the parking lot at the end of the day to bid the employees goodbye and answer any questions they might have." *Metal Industries*, 251 N.L.R.B. at 1523. Although one of the management officials made checkmarks on a clipboard during his observation, the ALJ and the Board concluded that making checkmarks on a clipboard he normally carried was

not so coercive or unusual that it rose to the level of unlawful surveillance. *Id*.

**[5]** We defer to the Board's conclusion that Ms. Sapien's and Ms. Briand's brief, spontaneous interruptions were not coercive because it is "rational and consistent" with the Act. Applying its new three-factor test, the Board reasonably determined that where the duration of the observation was short and the employer's behavior was not out of the ordinary, verbally interrupting organizing activity does not necessarily violate Section 8(a)(1). *Id*. at *3. The Board's creation of a three-factor test for unlawful surveillance is "reasonably defensible." *United Union of Roofers, Waterproofers & Allied Workers, Local 81*, 915 F.2d at 510. Therefore, the petition for review is DENIED.