# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 5, 2018          Decided May 29, 2018

No. 17-1133

TRAMONT MANUFACTURING, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 17-1147

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Tony J. Renning* argued the cause for petitioner. On the briefs was *Jenna E. Rousseau*.

*David A. Seid*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Jill A. Griffin*, Supervisory Attorney.

Before: GARLAND, *Chief Judge*, and TATEL and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Three years ago, the National Labor Relations Board's General Counsel filed a complaint against petitioner Tramont Manufacturing, LLC, alleging that the company had violated the National Labor Relations Act by laying off twelve workers without first notifying its employees' union or bargaining with the union over matters such as the availability of severance pay or preferential rehiring. Although unchallenged Board precedent holds that the Act typically mandates bargaining over such layoff "effects," Tramont argued that a provision in an employee handbook that reserved the company's right to "implement" layoffs—a provision the Board agrees Tramont lawfully adopted as an initial employment term when it first hired the affected workers— relieved it of this bargaining duty. The Board disagreed, concluding that the handbook provision, silent as to effects, should not be read to displace Tramont's duty under the Act. Tramont seeks review of this conclusion, as well as certain of the Board's factual and remedial determinations. Because we agree with Tramont that the Board failed adequately to justify the legal standard governing its interpretation of the handbook, we remand for further explanation. In all other respects, we deny the petition for review.

## I.

Upon acquiring the assets of a bankrupt manufacturing company in 2014, Tramont Manufacturing, LLC ("Tramont"), agreed to rehire many of the company's employees and recognize their union, the United Electrical, Radio and Machine Workers of America (the "Union"). Instead of adopting the collective-bargaining agreement the Union had

negotiated with the predecessor company, however, Tramont opted to exercise the right afforded certain successor employers under *National Labor Relations Board v. Burns International Security Services, Inc.*, 406 U.S. 272 (1972), to unilaterally set the rehired workers' initial terms and conditions of employment pending the negotiation of a new collective-bargaining agreement, *see id.* at 291 (holding that "the mere fact that an employer is doing the same work in the same place with the same employees as his predecessor" does not in and of itself require the employer to "assume[] the obligations" of its predecessor's collective-bargaining contract). Tramont set out these initial terms in an employee handbook containing a section covering "Workforce Reductions (Layoffs)." Tramont Manufacturing, LLC, *Handbook: Employee Package and Benefit Details* § 5.5 (May 7, 2014) (*Handbook*), Joint Appendix (J.A.) 126. This section—the only handbook provision Tramont has put at issue in these proceedings— provided that, "[f]rom time to time, management may decide to implement a reduction in force" and went on to specify the "procedures" by which Tramont would "select employees to be retained" in the event of layoffs. *Id.* That section said nothing about what benefits, if any, laid-off workers would receive.

The present dispute kicked off on February 9, 2015, when Tramont, without first notifying the Union, issued layoff notices to twelve employees. The president of the Union's local chapter (the "Local"), who learned of the layoffs because he happened to be among the twelve, responded straightaway by asking Human Resources for a list of laid-off employees, and Tramont in turn provided a partial list by letter dated February 25. Shortly thereafter, in response to a request from the Union's national representative, Tramont scheduled a grievance meeting for March 30. At that meeting, the Union representative requested—for the first time—bargaining over the layoffs' effects, including the workers' rights and benefits,

and asked that the workers be reinstated with back pay in the interim. Tramont neither granted this request nor replied to a later email repeating it.

In response, the Local filed two sets of charges against Tramont with the National Labor Relations Board (the "Board"), alleging that the company had committed unfair labor practices in violation of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 151–169; *see id.* § 158(a) (cataloging such practices). The Board's General Counsel declined to take any enforcement action based on the first set of charges, which challenged the layoffs, explaining that, as a successor employer under the Supreme Court's *Burns* decision, Tramont had permissibly "set initial terms and conditions of employment at the time it hired the predecessor company's employees" and that the layoff decisions complied with these terms. Letter from Richard F. Griffin, Jr., General Counsel, NLRB, to Margot A. Nikitas, Associate General Counsel, United Electrical, Radio and Machine Workers of America 1 (Aug. 21, 2015), J.A. 175. Setting the stage for the issues before us, however, the General Counsel issued a complaint based on the second set of charges, which challenged Tramont's failure to notify the Union of the layoffs or bargain over their effects. *See* Complaint and Notice of Hearing, *Tramont Manufacturing, LLC*, No. 18-CA-155608 (NLRB Sept. 30, 2015).

Following a hearing on these charges, an administrative law judge (ALJ) concluded that Tramont had violated the Act by "fail[ing] to notify the Union of its decision to lay off [twelve] employees," and giving the Union no "meaningful opportunity to bargain" over effects. *Tramont Manufacturing, LLC* (*Tramont I*), 364 NLRB No. 5, at 6 (May 23, 2016). Recognizing that layoff effects are a mandatory subject of bargaining under Board precedent, *see id.* at 5 (citing *Lapeer Foundry & Machine, Inc.*, 289 NLRB 952, 954–55 (1988)), the

ALJ rejected Tramont's argument that the Union had waived its rights by waiting until March 30 to request effects bargaining, *see id.* at 6–7. In the ALJ's view, Tramont presented the Union "with a fait accompli" by failing to give notice of the layoffs until after they had been implemented. *Id.* at 6. Because the Union received no adequate opportunity to invoke its bargaining rights in the first place, the ALJ concluded, the timing of its eventual request was immaterial to Tramont's liability. *Id.* at 6–7.

The ALJ also rejected Tramont's argument that the handbook's layoff provision relieved it of its bargaining obligations. In doing so, the ALJ considered two distinct legal standards. First, the "contract coverage" standard, adopted by our court, provides that an employer need not bargain over any subject covered by a collective-bargaining agreement because that agreement represents the outcome of negotiations between employer and union and so must be enforced in a way that respects the bargain struck. *Id.* at 6 (citing *NLRB v. United States Postal Service*, 8 F.3d 832, 836 (D.C. Cir. 1993)). The ALJ found this standard inapplicable because "the parties did not bargain" over the handbook terms. *Id.*

Second, observing that the Board has in any event long eschewed this court's contract-coverage standard, the ALJ went on to apply the Board's favored rule, which relieves an employer of its bargaining duty only where a union has made a "clear and unmistakable waiver" of its rights. *Id.* Because the handbook provision on which Tramont relied was "silent about notification regarding layoffs and the effects of the layoffs," the ALJ concluded that, under the waiver standard, the provision did not relieve Tramont of its duty to bargain. *Id.*

The Board affirmed in all relevant respects, "[a]ssuming, without deciding, [that] waiver analysis [was] applicable"

because, it believed, "[n]o party ha[d] argued that it was improper for the [ALJ] to apply" the waiver standard. *Id.* at 1 n.1. Tramont then filed a petition for review in this court, claiming among other things that it had in fact challenged the ALJ's decision to apply the waiver standard. When the Board acknowledged that it had overlooked this argument, a panel of this court remanded the case to the Board so that it could "consider the issue." Per Curiam Order, *Tramont Manufacturing, LLC v. NLRB*, Nos. 16-1184, 16-1231 (D.C. Cir. Feb. 21, 2017).

The Board then vacated its prior order and, "tak[ing] up the case anew," again affirmed the ALJ. *Tramont Manufacturing, LLC* (*Tramont II*), 365 NLRB No. 59, at 1 (Apr. 7, 2017). In its new order, the Board concluded that the handbook's layoff provision gave Tramont no basis for avoiding its obligation to bargain over effects under "either the 'clear and unmistakable waiver' standard . . . or the 'contract coverage' standard." *Id.* at 2. As for the contract-coverage standard, the Board, like the ALJ, found "no judicial authority for the proposition that [it] could apply" absent a bargained agreement between employer and union. *Id.* Furthermore, the Board continued, even if that standard did apply, the cited handbook provision "[could not] be read to authorize [Tramont] to refuse to bargain with the Union over the *effects* of . . . layoffs" because the provision covered only the criteria for selecting which workers to lay off. *Id.* As for the waiver standard, the Board agreed with the ALJ that the handbook provision contained no clear and unmistakable waiver of the Union's bargaining rights. *See id.*

Though reaching the same conclusion as it had in its prior, vacated order, the Board imposed a slightly different remedy. Whereas the original order had required Tramont to reimburse the laid-off employees for their job-hunting and interim work-

related expenses only to the extent that those expenses exceeded the affected workers' interim earnings, *see Tramont I*, 364 NLRB No. 5, at 1 n.2, the new order, relying on intervening Board precedent, required the company to reimburse these expenses irrespective of interim earnings, *see Tramont II*, 365 NLRB No. 59, at 1 n.2.

With the Board's original order vacated, this court dismissed the petition for review of that order as moot. *See* Clerk's Order, *Tramont Manufacturing, LLC v. NLRB*, Nos. 16-1184, 16-1231 (D.C. Cir. May 15, 2017). Tramont then initiated the present action by petitioning for review of the new order, and the Board cross-applied for enforcement. Tramont argues that the Board (1) improperly concluded that the handbook's layoff provision did not relieve Tramont of its duty to bargain over effects, (2) erred in affirming the ALJ's findings that the Union neither received sufficient notice of the layoffs nor waived its bargaining rights by failing to timely invoke them, and (3) lacked authority to impose a remedy more burdensome than the one imposed in its original order. We consider these arguments in turn.

## II.

We review the Board's order under a "highly deferential standard," setting it aside "only if the Board 'acted arbitrarily or otherwise erred in applying established law to the facts at issue, or if its findings are not supported by substantial evidence.'" *Waterbury Hotel Management, LLC v. NLRB*, 314 F.3d 645, 650 (D.C. Cir. 2003) (quoting *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 32 (D.C. Cir. 1995)); *see also* 29 U.S.C. §§ 160(e), (f) (directing that the Board's adequately supported factual findings be treated as "conclusive"). That said, "[w]hile our review is deferential, we will not 'rubber-stamp [Board] decisions,'" *Consolidated Communications, Inc. v. NLRB*, 837 F.3d 1, 7 (D.C. Cir. 2016)

(quoting *Erie Brush & Manufacturing Corp. v. NLRB*, 700 F.3d 17, 21 (D.C. Cir. 2012)), and we will remand where a Board order "reflects a . . . lack of reasoned decisionmaking," *Penrod v. NLRB*, 203 F.3d 41, 46 (D.C. Cir. 2000).

**A.**

We begin with Tramont's principal argument—that the Board committed legal error by declining to read the handbook's layoff provision as displacing the statutory obligation to bargain over layoff effects. As Tramont sees it, the Board was obliged to apply this court's contract-coverage standard, relieving the company of any "duty to bargain" over "subjects already covered by" that provision. *United States Postal Service*, 8 F.3d at 836–37. And the provision "covers" layoff effects, Tramont goes on, because it "specifically addresses the right of management to 'implement' a reduction in force." Pet'r's Br. 33 (emphasis omitted). Alternatively, Tramont argues that even if the Board permissibly declined to apply the contract-coverage standard, the challenged order was nonetheless arbitrary because the Board offered no reasoned justification for applying the waiver standard in its place.

We have no need to decide whether the handbook provision covers layoff effects under a contract-coverage standard because the Board's decision not to apply that standard fell "within [its] legitimate policy ambit in interpreting the National Labor Relations Act." *Enloe Medical Center v. NLRB*, 433 F.3d 834, 837 (D.C. Cir. 2005). Our court has explained that the contract-coverage standard rests on the rationale that, once a union and an employer enter into a collective-bargaining agreement, "the union *has exercised* its bargaining right," *United States Postal Service*, 8 F.3d at 836 (quoting *Department of the Navy v. FLRA*, 962 F.2d 48, 57 (D.C. Cir. 1992)), and that the extent to which the agreement fixes the parties' rights therefore presents a question of

"ordinary contract interpretation," *Enloe*, 433 F.3d at 839. As the Board aptly noted in the challenged order, however, this rationale evaporates where, as here, the employer argues that its bargaining duties have been displaced not by a bargained-for contract, but instead by "a handbook provision" that it has itself "unilaterally implemented . . . and to which the Union ha[s] never agreed." *Tramont II*, 365 NLRB No. 59, at 2.

Tramont cites no precedent—nor are we aware of any—from this or any court applying the contract-coverage standard when determining which subjects a *Burns* successor's initial terms and conditions remove from mandatory bargaining, let alone any precedent holding that the Board must apply this standard. Instead, Tramont asserts that "[t]his situation is no different than one involving a current collective bargaining agreement, or a situation where an employer must maintain the status quo after expiration of a collective bargaining agreement." Reply Br. 9; *see also Wilkes-Barre Hospital Co. v. NLRB*, 857 F.3d 364, 376–77 (D.C. Cir. 2017) (applying contract-coverage standard to the terms of a collective-bargaining agreement that had expired but that "continue[d] to 'define the status quo'" between the parties, *id.* at 374 (quoting *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 206 (1991))). This is wrong. Where a collective-bargaining agreement—either operative or expired—is in play, the Board must, in considering the agreement's scope, take into account the possibility that the union has chosen to "negotiate for a contractual provision limiting [its] statutory rights." *Wilkes-Barre*, 857 F.3d at 376. But where, as here, an employer seeks release from its statutory obligations on the basis of initial employment terms it has itself drafted—terms that, indeed, disclaim any "inten[t] to create contractual obligations with respect to any matters [they] cover[]," *Handbook* § 12.1, J.A. 157—it would be perfectly reasonable for the Board to decide as a policy matter to construe those terms under a standard

other than the one that would apply to the terms of a bargained-for agreement.

Having rejected the contract-coverage standard, as it was entitled to do, the Board went on to apply "the 'clear and unmistakable waiver' standard, to which [it] adheres." *Tramont II*, 365 NLRB No. 59, at 2. Under that standard, "[a] union may contractually relinquish a statutory bargaining right if the relinquishment is expressed in clear and unmistakable terms." *United Technologies Corp.*, 274 NLRB 504, 507 (1985). The Board, however, neglected to explain its basis for applying this standard. Put simply, we do not see how employment terms unilaterally imposed *by an employer* could ever effect a waiver of bargaining rights *by the union*. Whatever standard the Board decides should govern the question of how far a *Burns* successor's initial employment terms displace the duty to bargain, framing that standard in terms of waiver is far from intuitive; at the very least, it is a choice that the Board must explain. *See Point Park University v. NLRB*, 457 F.3d 42, 50 (D.C. Cir. 2006) ("Without a clear presentation of the Board's reasoning, it is not possible for us to perform our assigned reviewing function . . . .").

Tellingly, even now the Board makes no attempt to explain how a waiver standard can sensibly apply to a *Burns* successor's unilaterally imposed initial employment terms. Instead, it claims that Tramont forfeited any challenge to that standard because it never "argued to the Board that[] it was improper . . . to apply the clear-and-unmistakable-waiver standard in the circumstances presented." Resp't's Br. 26. The record belies this claim. In its brief before the Board, Tramont argued that "the question of 'waiver' normally does not come into play with respect to subjects already addressed by the terms and conditions governing employment." Brief of Respondent, Tramont Manufacturing, LLC in Support of

Exceptions to the Record and Proceedings at 15, *Tramont Manufacturing, LLC*, No. 18-CA-155608 (NLRB Feb. 24, 2016) (citing *United States Postal Service*, 8 F.3d at 836–37). Tramont could hardly have made this objection more explicit.

We shall therefore remand for the Board to explain its decision to apply the waiver standard to the question of whether a *Burns* successor's initial terms and conditions of employment relieve the employer of any given bargaining duty. On remand, if the Board "find[s] itself unable to support" the use of that standard, "it is, of course, free to [employ a] different one[]." *National Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1161 n.5 (D.C. Cir. 2013). To be sure, even if the Board chooses to abandon its waiver standard in this context, it might, in its discretion, nonetheless decide that unilaterally imposed employment terms should be narrowly construed and that liability remains appropriate here. Should it do so, however, it must respond to Tramont's argument that such an outcome would run counter to *Monterey Newspapers, Inc.*, 334 NLRB 1019 (2001), in which the Board held that the Act imposed no obligation on a *Burns* successor to bargain over "the rate of pay it proposed in each job offer it made to each prospective new employee" where the employer's initial employment terms established that new employees would be offered pay rates within specified bands, *id.* at 1019. As we have explained, where "the resemblance between the present case" and prior cases is sufficiently strong, "it is incumbent upon the [Board] to explain why the line of precedent either does not apply, or why departure from that line is warranted in this case." *Lone Mountain Processing, Inc. v. Secretary of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013).

**B.**

We can quickly dispense with Tramont's remaining challenges.

First, the company argues that the ALJ's finding that the Union received inadequate notice of the layoffs was unsupported by substantial evidence. When Tramont raised this claim in its exceptions, however, the Board "disregarded" it because the company had "presented no argument in support." *Tramont II*, 365 NLRB No. 59, at 1 n.1; *see also* 29 C.F.R. § 102.46(a)(1)(i)(D) (requiring a party excepting to an ALJ's decision to provide "authorities and argument in support of the exceptions"); *id.* § 102.46(a)(1)(ii) (authorizing the Board to "disregard[]" any exception that "fails to comply" with this requirement). Having neglected in its opening brief here to make more than a glancing, footnoted response to the Board's decision to disregard this exception, Tramont has forfeited the chance to challenge that decision. *See, e.g.*, *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("A footnote is no place to make a substantive legal argument on appeal; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture."); *Board of Regents of the University of Washington v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996) ("[W]e have generally held that issues not raised until the reply brief are waived.").

Next, Tramont challenges the ALJ's finding, affirmed by the Board, that "the Union . . . did not waive its right to request to bargain" by waiting until the March 30 meeting to request effects bargaining. *Tramont I*, 364 NLRB No. 5, at 6 (ALJ decision); *see also Tramont II*, 365 NLRB No. 59, at 1 (affirming the ALJ's factual findings). But a union is obliged to request bargaining over an employment action only if it has received adequate advance notice of that action, *see Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 314 (D.C. Cir. 2003) ("[N]otice of a *fait accompli* is simply not the sort of timely notice upon which the waiver defense is predicated." (quoting *International Ladies' Garment Workers Union, AFL-CIO v. NLRB*, 463 F.2d 907, 919 (D.C. Cir. 1972))), and as we have

just explained, Tramont has forfeited its opportunity to challenge the Board's basis for rejecting its argument that the Union received adequate notice. We therefore have no basis for upsetting the ALJ's supportable determination that "[Tramont's] failure to provide advance notice of its layoff[s] create[d] a situation where the Union could not have given up its bargaining rights by asking to bargain effects after the layoffs took place." *Tramont I*, 364 NLRB No. 5, at 7.

Moreover, even were we to overlook Tramont's forfeiture, substantial evidence supports the ALJ's findings. *See NLRB v. Oklahoma Fixture Co.*, 79 F.3d 1030, 1035 (10th Cir. 1996) ("Whether an employer has provided meaningful and timely notice [of an action subject to bargaining] is essentially a question of fact, and the Board's findings in this regard are to be accepted if supported by substantial evidence."). Tramont, after all, failed to notify the Union of the layoffs until after they were implemented, and even then the Union learned of them only indirectly through a layoff notice addressed solely to the president of its Local, which said "nothing about other laid-off employees." *Tramont I*, 364 NLRB No. 5, at 6. Given these undisputed facts, as well as Tramont's delay in providing the Union a list of laid-off employees, substantial evidence supports the agency's conclusions, first, that the window for meaningful bargaining had already closed by the time the Union received notice and, second, that the Union's subsequent delay in requesting bargaining therefore did not waive its rights.

Finally, Tramont argues that the Board's imposition of a remedy more burdensome than the one it had imposed in its initial, vacated order exceeded the scope of this court's remand order. Tramont, however, failed to make this argument to the Board in a motion for reconsideration or otherwise. We therefore lack jurisdiction to consider it. *See* 29 U.S.C. § 160(e)

("No objection that has not been urged before the Board . . . shall be considered by the court . . . ."); *Flying Food Group, Inc. v. NLRB*, 471 F.3d 178, 185 (D.C. Cir. 2006) ("Where . . . a petitioner objects to a finding on an issue first raised in the decision of the Board rather than of the ALJ, the petitioner must file a petition for reconsideration with the Board to permit it to correct the error (if there was one).").

## III.

For the foregoing reasons, we grant Tramont's petition for review in part, remanding for the Board to provide an explanation of the legal standard it applies when determining which subjects of mandatory bargaining are displaced by a *Burns* successor's unilaterally imposed employment terms. In all other respects, we deny the petition for review.

*So ordered.*