**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,

*Petitioner*,

NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES & TECHNICIANS, THE BROADCASTING AND CABLE TELEVISION WORKERS SECTOR OF THE COMMUNICATIONS WORKERS OF AMERICA, LOCAL 51, AFL-CIO,

*Intervenor*,

v.

NEXSTAR BROADCASTING, INC., d/b/a KOIN-TV,

*Respondent.*

No. 20-71480

NLRB Nos.
19-CA-219885
19-CA-219987

OPINION

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted June 8, 2021
Portland, Oregon

Filed July 12, 2021

Before:  Kim McLane Wardlaw and Andrew D. Hurwitz, Circuit Judges, and Susan R. Bolton,[*] District Judge.

Opinion by Judge Hurwitz

---

## SUMMARY[**]

### Labor Law

The panel granted the National Labor Relations Board's petition for enforcement of its decision holding that management of a television station committed unfair labor practices under subsections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA") by making two unilateral changes to the existing terms of the conditions of employment after a collective bargaining agreement ("CBA") expired.

Following expiration of the CBA, management began requiring employees to complete an annual motor vehicle and driving history background check.  In addition, management began posting employee work schedules two weeks in advance after it had previously posted schedules four months in advance.

Agreeing with the Board, the panel rejected management's argument that it was entitled to make changes

---

[*] The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

to the terms and conditions of employment under the "contract coverage" doctrine. The panel held that the Board's decision was rational and consistent with the NLRA where the Board applied its longstanding rule that after a CBA has expired, unilateral changes by management are permissible during bargaining only if the CBA contained language explicitly providing that the relevant provision permitting such a change would survive contract expiration. The panel concluded that there was no explicit language in the CBA to allow management to make unilateral changes to terms and conditions of employment in the post-expiration period.

The panel rejected management's argument that the Board should have referred this dispute to arbitration.

## COUNSEL

Eric Weitz (argued) and Brady Francisco-Fitzmaurice, Attorneys; Usha Dheenan, Supervisory Attorney; David Habenstreit, Associate General Counsel; Ruth Burdick, Acting Deputy Associate General Counsel; Alice B. Stock, Deputy General Counsel; Peter B. Robb, General Counsel; National Labor Relations Board, Washington, D.C.; for Petitioner.

Anne I. Yen (argued) and David A. Rosenfeld, Weinberg Roger & Rosenfeld, Alameda, California, for Intervenor.

Charles W. Pautsch (argued), Associate Counsel, Nexstar Media Group Inc., Irving, Texas, for Respondent.

**OPINION**

HURWITZ, Circuit Judge:

The management of a television station and the union representing the station's employees entered into a collective bargaining agreement ("CBA").  When the CBA expired, management made two unilateral changes to the existing terms and conditions of employment.  Subsections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), (5), provide that such unilateral changes made before bargaining over a new CBA reaches an impasse are unfair labor practices.  *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991).

Management nonetheless asserts that it was entitled to make the changes under the "contract coverage" doctrine.  *See MV Transp., Inc.*, 368 NLRB No. 66, 2019 WL 4316958, at *2 (Sept. 10, 2019).  Rejecting that argument, the NLRB applied its longstanding rule that after a CBA has expired, unilateral changes by management are permissible during bargaining only if the CBA "contained language explicitly providing that the relevant provision" permitting such a change "would survive contract expiration." *Nexstar Broad. Inc.*, 369 NLRB No. 61, 2020 WL 1986474, at *3 (Apr. 21, 2020).    Finding that decision "rational and consistent with" the NLRA, *Local Joint Exec. Bd. of Las Vegas v. NLRB*, 515 F.3d 942, 945 (9th Cir. 2008) (cleaned up), we grant the NLRB's petition for enforcement.

I

The employees of the KOIN television station in Portland, Oregon are represented by The National Association of Broadcast Employees & Technicians, the Broadcasting and Cable Television Workers Sector of the

Communications Workers of America, Local 51, AFL-CIO ("the Union"). When Nexstar Broadcasting purchased the station in January 2017, it adopted the operative CBA. Between June and September of that year, Nexstar and the Union unsuccessfully attempted to negotiate a new CBA, and the agreement expired on September 8.

Later that month, Nexstar began requiring employees to complete an annual motor vehicle and driving history background check. Under the "Employee Guidebook" referenced in Article 10.1 of the CBA, these background checks were previously required only of employees involved in a motor vehicle accident while on the job. And in February 2018, Nexstar began posting employee work schedules two weeks in advance. Although Article 8.1 of the CBA only required that work schedules be posted "two (2) weeks in advance of the commencement of the workweek," since at least 1993 station managers had posted schedules four months in advance pursuant to Article 8.1's other requirement that they be posted "as soon as they are known."

The Union filed charges with the NLRB alleging that these two unilateral changes to existing terms and conditions of employment constituted unfair labor practices; the NLRB's general counsel issued a complaint. The parties stipulated to the facts and submitted the dispute to an administrative law judge ("ALJ") for decision.

The ALJ held that the unilateral changes violated NLRA § 8(a)(1) and (5) because the Union had not "clearly and unmistakably waived" its right to bargain over them. The ALJ declined to apply the "contract coverage" standard, under which a CBA's terms are analyzed "to determine whether action taken by an employer was within the compass or scope of contractual language granting the

employer the right to act unilaterally." *See MV Transp., Inc.*, 2019 WL 4316958, at *2.

The NLRB rejected Nexstar's exceptions to the ALJ's ruling. Although the NLRB had previously applied the "contract coverage" standard, which does not require explicit CBA language to authorize unilateral changes in terms of conditions of employment, to *unexpired* CBAs, it declined to apply the doctrine to an expired CBA. Instead, it found that "provisions in an expired collective-bargaining agreement do not cover postexpiration unilateral changes unless the agreement contained language explicitly providing that the relevant provision would survive contract expiration." *Nexstar Broad., Inc.*, 2020 WL 1986474, at *3. Finding no express language in the CBA permitting the changes, the NLRB found that Nexstar was required to "maintain the status quo" during negotiations. *Id*. at *4 (citing *NLRB v. Katz*, 369 U.S. 736, 743 (1962)). The NLRB ordered Nexstar to rescind the changes, bargain with the Union before imposing further changes, and post remedial notices. The NLRB then petitioned this Court for enforcement of those orders.

II

Although the federal courts are the "principal sources of" CBA interpretation, *NLRB v. Strong*, 393 U.S. 357, 360–61 (1969), the NLRB regularly interprets CBAs in deciding allegations of unfair labor practices. *Id*. at 361; *NLRB v. C&C Plywood Corp.*, 385 U.S. 421, 428 (1967). When reviewing NLRB orders, *see* 29 U.S.C. § 160(e) and (f), we must uphold the agency's decision if it "correctly applied the law and its factual findings are supported by substantial evidence." *Glendale Assocs. v. NLRB*, 347 F.3d 1145, 1151 (9th Cir. 2003). The NLRB's interpretation of the NLRA "is accorded considerable deference as long as it is 'rational and

consistent' with the statute." *Local Joint Exec. Bd. of Las Vegas*, 515 F.3d at 945 (quoting *NLRB v. Calkins*, 187 F.3d 1080, 1085 (9th Cir. 1999)).    Similarly, the Board's interpretation of a CBA is "entitled to deference" if it is "reasonable and not inconsistent with the Act's policies." *NLRB v. Int'l Brotherhood of Elec. Workers, Local 11*, 772 F.2d 571, 575 (9th Cir. 1985).

### III

### A

A CBA is interpreted "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015).  One such familiar principle is that "contractual obligations will cease, in the ordinary course, upon termination of the [CBA]." *Litton*, 501 U.S. at 207.  But, after a CBA expires, the "terms and conditions [of employment] continue in effect by operation of the NLRA.  They are no longer agreed-upon terms; they are terms imposed by law, at least so far as there is no unilateral right to change them." *Id*. at 206.  NLRA § 8(a)(1) and (5) demand a "continuation of the status quo" during negotiations over a successor CBA, *Katz*, 369 U.S. at 746, absent "explicit" agreement to the contrary, *Litton*, 501 U.S. at 207.

The statutory scheme recognizes that allowing an employer to make unilateral changes to the terms and conditions of employment during negotiations creates an untenable power imbalance infringing the employees' § 5 rights to bargain and their § 1 rights to organize. *See Litton*, 501 U.S. at 198; 29 U.S.C. § 158(a)(1), (5); *Queen Mary Rest. Corp. v. NLRB*, 560 F.2d 403, 410 (9th Cir. 1977).  "[I]t is difficult to bargain if, during negotiations, an employer is

free to alter the very terms and conditions that are the subject of those negotiations." *Litton*, 501 U.S. at 198. Accordingly, *Katz* found that an employer violated the NLRA by imposing unilateral changes to employees' sick leave and merit policies without first bargaining to impasse, holding that § 8(a)(5) and (1) require a "continuation of the status quo" during initial CBA negotiations. 369 U.S. at 746. *Litton* then applied this rule to expired CBAs, making clear that CBA "terms and conditions continue in effect by operation of the NLRA" upon expiration, absent explicit agreement that contract rights and obligations will survive. 501 U.S. at 206–07.

Applying this doctrine, we have held that an employer could not stop making payments to employee healthcare and pension trust funds after a CBA expired, because the "status quo" at the time of expiration included those payments. *NLRB v. Carilli*, 648 F.2d 1206, 1214 (9th Cir. 1981) ("[T]he collective bargaining agreement survives its expiration date for purposes of marking the status quo as to wages and working conditions."). Similarly, we enforced an NLRB order finding violations of § 8(a)(5) and (1) when an employer stopped paying into an employee health and welfare fund and reduced wages after the CBA expired. *NLRB v. Auto Fast Freight, Inc.*, 793 F.2d 1126, 1129–31 (9th Cir. 1986).

The same rule applies with respect to employment practices. "[E]ven if not required by a [CBA]," such practices, if "regular and long-standing, rather than random or intermittent, become terms and conditions of unit employees' employment, which cannot be altered without offering their collective-bargaining representative notice and an opportunity to bargain over the proposed change." *Sunoco, Inc.*, 349 NLRB 240, 244 (2007); *see NLRB v.*

*Merrill & Ring, Inc.*, 731 F.2d 605, 608 (9th Cir. 1984) (holding that a unilateral change to established practice violates § 8(a)(5) and (1)); *see also Queen Mary Rest. Corp.*, 560 F.2d at 408 (same).

B

In short, the NLRA freezes the terms and conditions of employment in place upon expiration of the CBA, until negotiations reach an impasse, in order to encourage productive bargaining. Nexstar does not seriously contest that the two changes at issue in this case departed from the status quo at the time the CBA expired. In any event, the NLRB's finding that they did is supported by substantial evidence. *See Glendale Assocs.*, 347 F.3d at 1151.

The parties stipulated that the CBA did not require annual checks of employee motor vehicle histories and that, under well-established practice, employees were required to submit to such checks only when involved in an accident on the job. When the CBA expired, Nexstar began requiring such checks.[1]

The parties similarly stipulated that the practice when the CBA expired was to post work schedules four months in advance. Article 8.1 of the CBA required work schedules to be posted "as soon as they are known to the employer," but

---

[1] Nexstar's counsel asserted at oral argument that because Article 10.1 of the CBA did not contain any specific policies regarding driving background checks, but instead referred to the "Employee Guidebook," the status quo included the employees' continuing obligation to adhere to the Guidebook's policies, which were always subject to change. This does not change the analysis, however, because we focus on the actual employment practices on the ground as they existed when the CBA expired. *Merrill & Ring, Inc.*, 731 F.2d at 608.

in any event no less than "two (2) weeks in advance."  The stipulation included the statement that since "at least as early as 1993," station managers had posted work schedules four months in advance.

C

The status quo rule of § 8(a)(5) and (1) is, however, not entirely inflexible.  The NLRA merely imposes a default rule that "govern[s] unless actively negated" by agreement to the contrary.  Oren Bar-Gill & Omri Ben-Shahar, *Rethinking* Nudge*: An Information-Costs Theory of Default Rules*, 88 U. Chi. L. Rev. 531, 533 & n.1 (2021).

A union may therefore expressly waive its right to bargain over specified changes to employment terms. *Litton*, 501 U.S. at 207; *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 707–08 (1983).  Before *MV Transportation*, the NLRB required a "clear and unmistakable waiver" by the union to permit all unilateral changes by management, whether the CBA had expired or remained in force.  *See Provena St. Joseph Med. Ctr.*, 350 NLRB 808, 810 (2007).[2]  But, in the wake of two decisions by our sister circuits, *see Chicago Tribune Co. v. NLRB*, 974 F.2d 933 (7th Cir. 1992); *NLRB v. U.S. Postal Serv.*, 8 F.3d 832 (D.C. Cir. 1993), the NLRB held in *MV Transportation* that a less demanding "contract coverage" standard applies to disputes over changes to terms and conditions of employment arising during the CBA term. 2019 WL 4316958, at *1.

---

[2] Although not relevant to this appeal, we note that other circumstances justifying unilateral changes have been recognized.  *See, e.g.*, *REB Elecs. of S.D. Inc.*, 320 NLRB 80, 81–82 (1995) (recognizing that compelling economic considerations might excuse bargaining in limited situations).

"Contract coverage theory" is simply a method of contract interpretation that analyzes "whether the action taken by an employer was within the compass or scope of contractual language granting the employer the right to act unilaterally." *Id.* at \*36 (Member McFerran, concurring in part and dissenting in part). "For example, if an agreement contains a provision that broadly grants the employer the right to implement new rules and policies and to revise existing ones, the employer would not violate Section 8(a)(5) and (1)" during the term of the agreement "by unilaterally implementing new attendance or safety rules or by revising existing disciplinary or off-duty-access policies." *Id.* at \*2 (majority opinion). By reviewing a contract's "compass or scope," instead of demanding unambiguous language of waiver, this theory favors management's ability to make unilateral changes. *Compare id. with Provena St. Joseph Med. Ctr.*, 350 NLRB at 810. As articulated in *MV Transportation*, "contract coverage" is not a theory of waiver: it is a method of interpreting CBA terms to determine what rights a party has actually obtained under the CBA. *See MV Transp., Inc.*, 2019 WL 4316958, at \*36; *see also Tramont Mfg., LLC v. NLRB*, 890 F.3d 1114, 1118–20 (D.C. Cir. 2018) (distinguishing "contract coverage" interpretation from "waiver analysis").

Nexstar's central argument is that the NLRB's shift away from requiring express language of waiver in disputes arising during a CBA's term also should apply to a post-expiration dispute. In essence, it seeks a theory of waiver that does not require language in a CBA that expressly extends management's right to make unilateral changes during the post-expiration period. Instead, Nexstar argues, broad "compass or scope" language in the CBA concerning management rights effects a waiver. The NLRB responds that "clear and unmistakable" waiver remains the touchstone

in the post-expiration period. *Nexstar Broad., Inc.*, 2020 WL 1986474, at *3.

The NLRB's continued insistence on express language extending management's right to make unilateral changes during that period is "rational and consistent" with the NLRA. *Local Joint Exec. Bd. of Las Vegas*, 515 F.3d at 945 (cleaned up). The expiration of the CBA makes all the difference. As the Supreme Court has instructed, "ordinary principles of contract law" govern CBA interpretation. *Tackett*, 574 U.S. at 435. One familiar principle is that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Litton*, 501 U.S. at 207. When contractual obligations cease, the NLRA replaces "agreed-upon terms" with "terms imposed by law"; the statute requires the employer to preserve the "status quo" terms and conditions of employment during negotiations. *Id.* The CBA defines those terms and conditions only to the extent that it "mark[s] the status quo as to wages and working conditions." *Carilli*, 648 F.2d at 1214. But those status quo conditions also include "regular and long-standing" practices, "even if not required by" the CBA. *Sunoco, Inc.*, 349 NLRB at 244; *see also Merrill & Ring, Inc.*, 731 F.2d at 608.

Thus, the essential issue is whether the CBA gives the employer the right *after* the expiration of the contract to make unilateral changes to the terms or conditions of employment. It is not enough that the employer may have had that right during the term of the contract. The contract is no longer in existence, and the NLRA requires the status quo to be maintained. The question is whether the CBA provides that the employer has a *contractual* right to alter the status quo as to terms or conditions of employment that

survives the expiration of the CBA.  *See Litton*, 501 U.S. at 206; *Katz*, 369 U.S. at 746.

We assume without deciding that management had the right to impose the unilateral changes at issue in this case during the term of the CBA.  But an employer may not excuse itself from its obligation to maintain status quo working conditions after the CBA's expiration by simple reference to the broad compass or scope of *expired* contractual terms.  Rather, contract rights only survive expiration if the CBA explicitly so provides.  *Litton*, 501 U.S. at 206.

Contrary to Nexstar's claims, none of our sister circuits has found a waiver of post-expiration § 8(a) bargaining rights by employing a "contract coverage" theory relying on a CBA's broad compass or scope.  *See Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 376 (D.C. Cir. 2017); *Tramont Mfg., LLC*, 890 F.3d at 1120.  The decision of the District of Columbia Circuit in *Tramont Manufacturing* is instructive. In that case, as here, the NLRB applied a "clear and unmistakable waiver" standard to changes imposed during post-expiration CBA negotiations.  890 F.3d at 1120.  The court found that the NLRB was "entitled" reject the contract coverage standard in this context, and that its decision "as a policy matter" would be "perfectly reasonable."  *Id*.  The court remanded to the NLRB merely because that choice among policy alternatives required a more complete explanation.  *Id*.; *see also Wilkes-Barre Hosp.*, 857 F.3d at 377 (finding employer's unilateral decision to stop longevity-based pay increases after CBA expired "not covered" by the CBA, and then applying a clear and unmistakable waiver standard).  Nexstar's citations to cases applying the contract coverage theory to *unexpired* CBAs are unavailing.  *See U.S. Postal Serv.*, 8 F.3d at 833–35;

*Chicago Tribune*, 974 F.2d at 933; *Dep't of the Navy v. FLRA*, 962 F.2d 48, 50–52 (D.C. Cir. 1992) (interpreting a contract governed by the Federal Service Labor-Management Relations Statute); *Bath Marine Draftsmen's Ass'n v. NLRB*, 475 F.3d 14, 25–26 (1st Cir. 2007). These cases stand for nothing more than the proposition that while a CBA remains in force, it should be interpreted like a contract.

If a party to a CBA, either management or labor, wishes to extend contract rights beyond the expiration of the agreement, it may negotiate with the other side and attempt to obtain such an express contractual provision. A familiar example from the sports world illustrates the basic concept. Former Major League Baseball All-Star Bobby Bonilla retired in 2001, yet one of his former employers, the New York Mets, must pay him approximately $1.19 million every July 1 through 2035 as part of a deferred compensation agreement that has become an annual date of note and ridicule among baseball fans. *See Happy Bobby Bonilla Day! Why Mets pay him $1.19M every July 1*, ESPN, https://www.espn.com/mlb/story/_/id/27078321/happy-bob by-bonilla-day-why-mets-pay-119m-every-july-1 (last visit ed June 15, 2021). Now 56 years old, Bonilla is no longer obligated (or likely welcome) to play Major League Baseball—the terms of his employment contract ended two decades ago. Yet because the parties expressly so agreed in the contract, Bonilla has the right to demand continued payment, plus interest, notwithstanding the expiration of the term of his employment agreement.

## IV

We therefore review the CBA to determine whether the Union agreed, in clear and unmistakable language, to allow management to make unilateral changes to terms and

conditions of employment in the post-expiration period. Neither a "general contractual provision" nor "ambiguous language" is sufficient. *Wilkes-Barre*, 857 F.3d at 378 (cleaned up). The language must be "explicit." *Litton*, 501 U.S. at 207; *see S. Nuclear Operating Co. v. NLRB*, 524 F.3d 1350, 1357 (D.C. Cir. 2008) (reviewing for language expressly showing a union "*relinquishe[d]* its right to bargain").

There is simply no such language in this CBA. Nexstar relies on the contract's "zipper clause," which provides:

> NABET-CWA recognizes the exclusive right and responsibility of the Company to direct the working force and to direct the operations of the Company. The Company's rights shall include, but not be limited to, those necessary to maintain order and efficiently manage the Company, and to discharge, suspend, or discipline Employees for just cause and to establish working rules and to control station operations, provided, however, that the exercise of such rights does not violate the terms and provisions of this Agreement.

But such "generally worded management rights clauses . . . will not be construed as waivers of statutory bargaining rights." *Johnson-Bateman Co.*, 295 NLRB 180, 184 (1989); *see also Success Vill. Apartments*, 348 NLRB 579, 629 (2006), *enf'd*, 984 F.2d 864 (7th Cir. 1993) (holding that a zipper clause does not survive expiration); *Control Servs.*, 303 NLRB 481, 483–85 (1991), *enf'd*, 961 F.2d 1568 (3d Cir. 1992). Nexstar's reliance on the work hours provision

of Article 8.1,**³** the travel policy in Article 10.1,**⁴** and the "complete agreement" clause of Article 26.2,**⁵** fares no better. None of these provisions states that the employer's contractual rights extend beyond the life of the contract.

In any event, we must defer to the NLRB's interpretation of the CBA. *See NLRB v. S. Cal. Edison Co.*, 646 F.2d 1352, 1366–67 (9th Cir. 1981) (suggesting the facts "support an inference that the union waived the right to engage in sympathy strikes" but finding that inference "insufficient . . . to overcome the deference due the Board's interpretation" to the contrary). The general, and at times boilerplate, contractual clauses cited by Nexstar provide no basis to discard the NLRB's sensible conclusion that the CBA did not extend any purported right of management to make

---

**³** "The 'normal work week' shall be defined as commencing at 12:00 a.m. Monday and ending at 11:59 p.m. on Sunday. All work schedules, continuing hours of work and days off will be prepared and posted two (2) weeks in advance of the commencement of the workweek. The Employer will post work schedules as soon as they are known to the Employer."

**⁴** "Automobile travel by Employees shall be covered by the Vehicle Use Policy in the Company's Employee Guidebook. It is understood that under no circumstances shall an Employee be required to use their car under this Article. Employees who are ticketed for a moving violation for which they are responsible while driving on Company business must pay the fine for such ticket, whether the moving violation occurred while driving a company-owned vehicle or their own vehicle."

**⁵** "This contract and any accompanying Letters of Understanding which have been executed by the parties with respect to items of interpretation is the complete agreement between the parties. It cannot be modified or terminated except in writing executed by the Parties hereto."

changes to the terms and conditions of employment into the post-expiration period.

## V

We address one additional matter.  Nexstar argues that the NLRB should have referred this dispute to arbitration. Reviewing for abuse of discretion, *see Servair, Inc. v. NLRB*, 726 F.2d 1435, 1438–39 (9th Cir. 1984), we disagree.

*Litton* controls.  Where, as here, "the arbitration duty is a creature of the collective-bargaining agreement . . . arbitrability must be determined by reference to the agreement, rather than by compulsion of law."  *Litton*, 501 U.S. at 204 (cleaned up).  *Litton* held that an employment dispute arising after expiration of a CBA is not arbitrable because, like other contractual terms, the agreement in the CBA to arbitrate expires with the CBA.  *Id*. A dispute may be arbitrable after the CBA's expiration when the dispute concerns "rights which accrued or vested under the [CBA]."  *Id.* at 209.  But that is not the case here.  This dispute is about policy changes imposed after the CBA expired and has no bearing on any rights that vested before expiration, such as compensation.  *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977).

## VI

At bottom, this is a case about whether management's claimed rights under a contract survive the contract's expiration.  Ordinary contract principles teach that they do not unless express contractual language so provides.  The NLRB's decision not to displace those principles is

consistent with the NLRA and precedent. We therefore grant its petition for enforcement.

**PETITION FOR ENFORCEMENT GRANTED.**